Decided April 16, 1982 —<br>Rehearing denied May 3, 1982 —

*Sammy J. Hawkins,* for appellant.
*Alan F. Herman, Wayne Grant,* for appellee.
*Don C. Keenan, Charles R. Ashman,* amicus curiae.

## 63261. THRIFT v. MAXWELL.

Birdsong, Judge.

Dissipation of Corporate Assets. The facts reflect that Maxwell came to DeKalb County on or before June 1973 and induced the appellant Jack Thrift to invest $9,000 in a corporation, the purpose of which was to own and operate four franchises in North Carolina involving Bonanza Steak houses. Thrift also was the owner of an advertising business and as part of the inducement, Maxwell asserted that a considerable amount of advertising business would be

generated by the four businesses. In June 1973, Maxwell incorporated All South Sirloin Pits, Inc. There were three principal stockholders, Maxwell holding approximately 60%, one Parmer holding approximately 30% and Thrift holding approximately 10%. Subsequently Maxwell purchased the 30%; thus Maxwell ultimately controlled 90% of the corporation.

From 1973 until 1976, when the franchises were liquidated, the corporation reflected continuing losses. Thrift and Parmer attended board of director meetings and other corporate business meetings as officers of the corporation on numerous occasions and voted upon the continuing business operations. During this period of time, Thrift prepared advertising material concerning the steak houses and caused it to be published both in local North Carolina newspapers and on local radio stations. Thrift apparently paid for this advertising and billed the corporation on an open account. There is evidence that at least $16,000 in advertising costs was incurred in the first one or two years, all of which were paid for by the corporation. An additional $12,000 to $14,000 in advertising costs was billed to the corporation during the second and third year of the corporation's life but only about $3,000 to $4,000 was paid leaving an open account balance of approximately $10,571 owing to Thrift. In June 1976, the franchises were liquidated and Maxwell allegedly utilized all cash assets in satisfaction of debts and delinquent taxes, paying some taxes out of his own pocket. Thrift brought the present suit in 1979 personally against Maxwell, urging fraud in inducement and seeking the return of his $9,000 investment, satisfaction of the $10,571 owing on open account, attorney fees, and punitive damages in the amount of $10,000. Maxwell answered denying the allegations and denying that he, Maxwell, had personally entered into any contracts with Thrift as opposed to acting on behalf of the corporation and contending that Thrift should have complained as a minority stockholder through a derivative suit on behalf of the corporation. The parties exchanged interrogatories and obtained admissions of fact and authenticity of documents pertaining to the business operations of the corporation. Maxwell moved for dismissal of the complaint for failure to state a cause of action or alternatively as a motion for summary judgment. In 1981 Thrift added a third count, asserting a derivative action on behalf of the corporation in an amount of $100,000 but still seeking the return of his $9,000 investment and recoupment of the open account advertising costs.

The substance of Thrift's complaint was that Maxwell intended from the beginning to obtain as much cash as possible, establish a business and then bleed as much as possible of the invested cash and business generated profits, liquidate the business and abscond, and

thereafter invest the ill-gotten gains in a new location. Thrift alleged as fraud that Maxwell made false promises concerning the success of the business, gave false but glowing reports of the success of the steak houses, voted and paid himself a large salary, took all the proceeds of the business, destroyed the records and disappeared. However, at no point does Thrift give the substance of the promises, how or in what way the recurring financial reports (which all showed continuing losses) were false or misleading, what salary was voted or paid, or that he (Thrift) was misled or unaware of the operating history of the corporation at the several directors meetings that he attended. Furthermore, Thrift does not show that he entered into a personal contract with Maxwell to furnish advertising services but rather the services apparently were rendered on behalf of All South Sirloin Pits, Inc., billed to the corporation and paid for by that corporation.

Based upon the pleadings as well as the evidence before it, the trial court granted Maxwell's motion to dismiss for failure to state a cause of action. Thrift brings this appeal enumerating four errors but in substance urging that the trial court erred in granting the motion as to each of the counts. *Held:*

1. On the hearing of the defendant's (Maxwell's) motion, the trial court admitted and apparently considered evidence; therefore, we will treat the grant of the motion (denominated by the trial court as a motion to dismiss for failure to state a cause of action) as in actuality a grant of a motion for summary judgment. *Newsrack Supply v. Heinle,* 127 Ga. App. 843 (195 SE2d 193).

2. The trial court properly granted summary judgment as to Count 1. Thrift brought his action based upon a personal business tort allegedly committed by Maxwell by fraudulently inducing him (Thrift) to invest $9,000 in the corporation. However, a corporation is an artificial person created by law. The corporate identity is entirely separate from the identity of its officers and stockholders. A corporation and even its sole owner are two separate and distinct persons. *Thoni Oil Magic Benzol Gas Stations v. Kimsey,* 114 Ga. App. 638, 639 (152 SE2d 576). Moreover, as a general rule, a claim for misappropriation and waste of corporate assets by a director or officer of a corporation belongs to the corporation and not to its shareholders, and generally complaining shareholders will not be allowed to recover directly. *Pickett v. Paine,* 230 Ga. 786, 790 (199 SE2d 223). Thus, we conclude Thrift's complaint contained in Count 1 was improperly brought as a stockholder's action individually against an officer of the corporation in his personal capacity.

However, Thrift argues that because of the fraudulent activities by Maxwell, the tort was committed personally by the president and majority stockholder (Maxwell) and allows him (Thrift) to pierce the

corporate veil and proceed directly against Maxwell. We do not dispute Thrift's legal arguments. We simply do not conceive them as being applicable in this case. As against a motion for summary judgment, Thrift's pleadings and evidence were required to be specific as to acts of fraud in order to create an issue of fact for a jury. *Hough v. Johnson,* 242 Ga. 698, 699 (251 SE2d 288); *Candler v. Clover Realty Co.,* 125 Ga. App. 278, 280 (187 SE2d 318). Ultimate or conclusory facts and conclusions of law, as well as statements made on belief or on information and belief, cannot be utilized on a summary judgment motion. *Dickson v. Dickson,* 238 Ga. 672, 674 (235 SE2d 479). All of Thrift's allegations of fraud by Maxwell are mere conclusions, not factually supported either in pleadings or in supporting documentation. Under the facts the trial court did not err in concluding that Thrift did not pierce the corporate veil, correctly determined that Count 1 had to be brought as a derivative action, and thus properly granted summary judgment as to Count 1.

3. Thrift's second count sought to recover the advertising costs incurred by his advertising company, once again directly from Maxwell. There was no written contract and the obligation and its terms must generally be culled from the documentary evidence developed during discovery. It is at once obvious that Thrift advertised on behalf of All South Sirloin Pits, Inc. Though Maxwell was the chief operating officer, there is no evidence in the record indicating that Maxwell acted in any personal capacity other than as the chief executive for the corporation. The billing was addressed to and paid by All South. Most of the correspondence dealing with advertising appears to be from Thrift who sought aggressively to advertise the four franchises with a view toward reversing the negative financial posture of the steak houses. In the absence of any evidence that Maxwell entered into the contract for advertising services in his personal capacity, there is no personal liability imposable against Maxwell. *Wilson v. Sheppard,* 136 Ga. App. 475, 477 (221 SE2d 671). As to personal liability as a defrauding officer, appellant musters the same arguments in support of this count as he did in support of the first. For the same reasons, we find that the trial court properly entered summary judgment as to Count 2.

4. In Count 3, Thrift in 1981 did bring an action in the debatable position of a defrauded and unprotected minority stockholder as a derivative action on behalf of the corporation. However, examination of that count discloses that Thrift sought to avoid the requirements of first seeking redress against the corporation by alleging that the corporation was directly controlled by Maxwell; thus, such a demand against the corporation would be a fruitless action. Once again, this is nothing more than an unsupported conclusion by Thrift. Opposed to

this is evidence that Thrift was actively involved in the management of the corporation and was aware or should have been aware of disposition of corporate assets. He attended directors meetings, voted on corporate actions, was privy to corporate records and given routine corporate financial statements. When viewed in this context, this count does not support a claim for relief because it was not alleged that the appellant was a stockholder due a fiduciary consideration (as opposed to an officer who dealt at arm's length with the other officers, including Maxwell) and as a stockholder one who had complied with the condition precedent of first seeking redress within the corporation. The reason offered in lieu of such redress, as indicated, is not sufficient factually to excuse the failure to pursue the remedy through the corporate structure required before suing an officer directly. *Burnette v. Southern Consolidated Inns,* 240 Ga. 98, 99 (239 SE2d 513); *Hasty v. Randall,* 152 Ga. App. 365, 366 (262 SE2d 626). We discern no error in the grant of summary judgment as to Count 3.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED APRIL 9, 1982 —
REHEARING DENIED MAY 3, 1982 — 

*Roy J. Leite, Jr.,* for appellant.
*Vickie Cheek Lyall,* for appellee.