18912. SOUTHEAST SHIPPERS ASSOCIATION, INC. *v.* GEORGIA PUBLIC SERVICE COMMISSION *et al.*

Argued March 14, 1955—Decided April 12, 1955.

*Nilan & Rosenstrauch,* for plaintiff in error.

*Eugene Cook, Attorney-General, Dudley Cook, Assistant Attorney-General, Moise, Post & Gardner, Allen Post,* contra.

ALMAND, Justice. The Georgia Public Service Commission filed an equitable petition against Southeast Shippers Association, Inc., alleging that the defendant was transporting goods for hire over the public roads of this State by motor vehicles in intrastate commerce without having first registered and qualified and obtained a certificate of public convenience and necessity from the petitioner. Under a rule nisi requiring the defendant to show cause why it should not be temporarily enjoined as prayed, the defendant filed its response, and, after a hearing, was enjoined from transporting property over the highways of this State for any compensation, charge, or assessment. The defendant assigns error on this order.

The sole questions for determination are: (1) whether or not the evidence upon the hearing authorized a finding that the defendant in its operations was engaged in business as a motor carrier for hire in the transportation of goods in intrastate commerce, and subject to the requirement that, before it could engage in such business over the highways of this State, it must obtain a certificate of public convenience and necessity from the petitioner; and (2) whether or not it was error to grant an interlocutory injunction.

In summary, the evidence before the trial judge was as follows: Southeast Shippers Association, Inc., was incorporated by the Superior Court of Fulton County on April 27, 1950, as a non-profit corporation, without any capital stock, for the purpose of "filing, pursuing and securing rates and rate adjustments for shippers and consignees of freight and express of every kind whatsoever, together with the filing and handling of loss, damage, and overcharge claims for and on behalf of shippers and consignors." Subsequently, on September 28, 1954, the Superior Court of Muscogee County granted an amendment to the charter of the corporation, which amendment provided that the principal office of the corporation should be located in Muscogee County. Under this amendment, the corporation was authorized

to "pool and distribute freight shipments to obtain carload charges for less than carload shipments and other economic advantages resulting therefrom for the benefit of members only"; "to purchase, rent, lease or contract for the use of any trucks, equipment, supplies or other property"; "to store, handle and transport any property for members only"; "to act as a transportation agency, the object of said corporation being to collectively pick up, transport and distribute, for the benefit of and to its members, goods and merchandise ordered by such members"; "to deal with its members as if they were third persons"; "to charge such fees for the service it renders as may be deemed just and proper by the directing and managing officers, and to return at least once each year as a patronage refund all such fees accumulated in excess of expenses in proportion to patronage of each member"; "to continue to limit its purpose, objects, services, and operations for benefit of and to members only and not to engage in the transportation of goods for hire or so hold itself out to the public." In its operations, the only members of the defendant Association were persons or corporations doing business as merchants, manufacturers, or shippers of merchandise in Columbus. Where one was accepted as a member he paid a fee of $25. At present the Association has about 200 members.

The method of operation of the Association as to handling goods of its members is that the commodities of a member which are to be shipped from Columbus to Atlanta are delivered to the warehouse of the Association, and pooled with commodities to be so shipped by other members, and all such commodities are thereafter hauled in a truck owned and operated by the Association to the various consignees in Atlanta. On the day the commodities are shipped to Atlanta, the Association bills its members so shipping with what is called an "assessment," representing the charge made by it for transporting the commodities to Atlanta. The amount of the assessment charged to each member covers the estimated cost of transporting the commodities from Columbus to Atlanta, which on an average is about 10% less than the classified rate for motor carriers for hire operating under certificate of the Georgia Public Service Commission. The trucks of the defendant used in transporting commodities of

its members from Columbus to Atlanta, on the return trip from Atlanta to Columbus, transport from merchants and manufacturers in Atlanta, who are non-members of the Association, the goods or commodities that the Atlanta merchants and manufacturers are shipping to members of the Association in Columbus. The Atlanta shipper is charged the classified rate approved by the Georgia Public Service Commission, and in the adjustment between the Association and the member receiving the shipment from Atlanta, the Association pays to such member the difference between the assessment or charge made against the member and the classified rate paid by the Atlanta shipper. In about 10% of these shipments from Atlanta to Columbus, the shipper prepays the transportation charge, and in other instances the member is billed the charge, in which case he does not pay the classified rate to the Association, but pays the estimated cost of transporting the property. If there is any surplus remaining at the end of the year, the Association refunds to the members this surplus, on the basis of the amount of patronage of the member during the year. The Association has no lien on the goods of its members if the assessment or cost of transportation is not paid. The Association carries cargo and public-liability insurance which covers losses not exceeding $25,000 and $50,000. The general manager and treasurer of the Association testified that a member of the public "who is injured by one of our trucks and had a judgment in excess of that insurance would have no protection except recourse against our trucks and office furniture," and that the Association's net worth at the present time is about $500 to $1,000; that the Association is collecting the 3% Federal transportation tax from its members, and from non-members shipping goods to members. If the Association lost money, there is no requirement that its members should be assessed to make up this loss. At present, the sole operation of the Association is the handling of goods and commodities of its members from Columbus to Atlanta, and the shipments of non-members from Atlanta to members in Columbus.

In our opinion the Association, under the above-stated facts, is operating as a motor carrier for hire, and comes within the provisions of the Motor Carrier Act approved March 31, 1931 (Ga. L. 1931, Ex. Sess., pp. 99-114, Code § 68-501 et seq.). "The

term 'motor carrier' means every person except common carriers, owning, controlling, operating, or managing any motor-propelled vehicle . . . used in the business of transporting persons or property for hire over any public highway in this State and not operated exclusively within the corporate limits of any city or town." Code § 68-502 (c). Any person undertaking to transport goods for compensation is a carrier. Code § 18-101. Under the Motor Carrier Act, no motor carrier can operate without first obtaining from the Georgia Public Service Commission a certificate of public convenience and necessity, pursuant to findings to the effect that the public interest requires such operation. Code § 68-504. In the shipment of the goods of its members from Columbus to Atlanta, the Association receives compensation; and whether the amount so paid by the member is called an "assessment," or a "fee," it is a charge for services rendered. The fact that the Association has no capital stock and is not engaged in making a profit, does not change the relationship between the Association and any of its members in the shipment of merchandise, the relation between them being the same as between the Association and a non-member shipping its goods from Atlanta to Columbus, to wit, that of shipper and carrier. A determination of the question of the legal relationship between the Association and its members is not made from what the charter says, but from what the Association is doing. As to whether the defendant is subject to the Motor Carrier Act, ownership of the commodities transported is not the sole test, but the primary test is whether the transportation is for compensation. The Association occupies the status of a carrier, and in transporting such goods it is not acting as an agent, in the popular sense of the term, of its members. Being engaged in the transporting of goods for compensation, the Association falls squarely within the provisions of the motor carrier act. See *Montgomery & Atlantic Freight Lines* v. *Georgia Public Service Commission*, 175 *Ga.* 826 (166 S. E. 200).

The contention that the defendant is a co-operative association carrying goods and merchandise as agent for its members cannot be sustained. The original application for charter of the defendant Association recited that "said corporation shall be a non-profit corporation for the purpose of serving its members

and associates . . . and is therefore incorporated under the General Corporation Act of 1938, and section 22-1881; said corporation therefore is without capital stock." Except for the Nonprofit Co-operative Associations Act of 1921 (Code § 65-201 et seq.), which is confined to the transporting of agricultural products, there is no statutory provision in this State which authorizes the incorporation of a co-operative association for the transportation of the goods of its members for hire. The defendant is a nonprofit corporation incorporated under the Corporation Act of 1938. Code (Ann. Supp.) § 22-1881. "Although many states have a set of separate statutes relating to nonprofit corporations, it would seem that it has become the legislative intent of Georgia to treat a nonprofit corporation similar to the business or profit corporation. Although the ensuing consideration of both the substantive and procedural law relating to 'nonprofit corporations is comparatively inclusive, it must be remembered that, unless otherwise specifically noted, the fundamental rules and principles of law of profit and business corporations are equally applicable to nonprofit corporations." Nadler, Georgia Corporation Law, § 468.

In other jurisdictions having statutes similar to ours, in cases involving facts like those in the present case, the courts have uniformly held such associations to be motor carriers for hire. See Affiliated Service Corporation v. Public Utilities Commission of Ohio, 127 Ohio 47 (186 N. E. 703); Merchants' Mut. Assn., Inc. v. Matthews, 110 Fla. 225 (149 So. 27); North Shore Fish & Freight Co. v. North Shore Business Men's Trucking Assn., 195 Minn. 336 (263 N. W. 98); A. W. Stickle & Co. v. Interstate Commerce Commission, 128 Fed. 2d 155 (certiorari denied, 317 U. S. 650).

■ Under Code § 68-526, any motor carrier which operates on the highways of this State without a certificate of public convenience and necessity may be enjoined by the courts of this State from operating, at the suit of the Georgia Public Service Commission. Under the facts of this case, the trial court committed no error in granting the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*