A97A0152, A97A0153. DUNN et al. v. CECCARELLI et al.;
and vice versa.
(489 SE2d 563)

BEASLEY, Judge.

This case involves challenges to the voting procedures in an election to a seat on the board of a timeshare owners' association. Lake Tara Townhouse Association III, Inc., a Georgia nonprofit corporation, is a timeshare owners' association governed by a three-member board of directors, each having a term of three years, one of whom is elected at each successive annual meeting of the association members. In November 1995, Dunn, the president of the association, notified his fellow board members, Bigley and McClellan, that a board meeting would be held on December 7, 1995, to discuss the annual meeting of the timeshare owners on March 23, 1996, that would include the election of the board member to fill Bigley's position. Bigley was running for re-election, and Ceccarelli was opposing her. McClellan called and said he could not attend the meeting. At that meeting Dunn and Bigley, who constituted a quorum, established guidelines for the board election, which included provisions that (1) authorized Dunn, as President of the association, to cast ballots and proxies for all "weeks" (timeshare units) owned by the association itself; (2) declared that Fairfield Communities, Inc., the corporate successor to the declarant (Fairfield), which still owned unsold weeks, was not a member of the association and was accordingly not entitled to vote those weeks; and (3) that all members would be sent a ballot, including those enrolled in the "Fairshare Plus Program" and other timeshare exchange programs.

The ballots were mailed to the membership, indicating that Bigley had been nominated by the nominating committee for re-election to the board, and that ballots would be counted only if received five days before the annual meeting scheduled for March 23, 1996. Before the final ballot date, Ceccarelli and McClellan brought suit, individually and on behalf of "more than 300 proxies of Lake Tara Townhouse Association III," for injunctive relief and an accounting, along with a motion for a temporary restraining order against Dunn and Bigley, individually and as board members of the association. The complaint alleged Dunn and Bigley (1) violated election and voting requirements and procedures and (2) breached their fiduciary duty to the association and its members and committed self-dealing. The court issued a temporary restraining order, ordering Dunn and Bigley to

produce an accounting of the association members pursuant to OCGA § 14-3-720, extending the deadline for the elections from March 23, 1996 to April 6, 1996, and enjoining Dunn and Bigley from announcing the election results until April 8, 1996, for the court to review the votes cast and to determine their eligibility.

Dunn and Bigley moved for summary judgment. After reviewing the election results, the court determined to treat the parties' filings together as cross-motions for summary judgment and issued an order stating that Bigley violated her fiduciary duty to timeshare owners by failing to recuse herself when the board voted the proxy units; that she should not have used her position as a board member to cast proxy votes for herself without prior written approval from the proxy owners;[1] and that those proxy votes accordingly could not be counted in the final tally. Dunn and Bigley filed a notice of appeal from this order in the Supreme Court on the jurisdictional ground that the case involved equity, injunctive relief, and an accounting.

In a supplemental order, the court clarified its earlier ruling by stating that (1) the 154 association-owned weeks, voted by Bigley as Board member for herself as candidate, could not be counted;[2] (2) the 55 votes of the declarant Fairfield for weeks it owns would be counted; and (3) the votes cast by Fairfield as proxy holder for unit/week owners in the Fairshare program who did not otherwise cast their votes would be counted. Dunn and Bigley filed another notice of appeal from this order in the Supreme Court.

Ceccarelli and McClellan moved for contempt, contending Bigley and Dunn refused to count the votes as instructed by the court. In response, Dunn and Bigley filed a motion for enforcement of the supersedeas or, in the alternative, an application for an interim order of supersedeas as pending appeal. The court ruled that the orders issued following its temporary restraining order provide declaratory rather than injunctive relief, and that the notices of appeal accordingly act as supersedeas, requiring that the status quo be preserved. Ceccarelli and McClellan moved to set aside this order, arguing that the supersedeas deprived the court of jurisdiction even to hear the motion for enforcement of the supersedeas. The court denied this motion, from which Ceccarelli and McClellan appealed to the Supreme Court.

Both appeals were transferred to this Court on the ground they involved voting procedures and shareholder rights of nonprofit corporations, as well as supersedeas, and accordingly were not within the Supreme Court's exclusive jurisdiction.

---

[1] The votes were in fact cast by Dunn as president of the association.
[2] See n. 1.

1. In Case No. A97A0152, in their first enumeration of error, Dunn and Bigley claim that the action was a derivative one, as defined in OCGA § 14-3-740 (1) of the Georgia Nonprofit Corporation Code: " 'Derivative proceeding' means a civil suit in the right of a domestic corporation." They contend the court erred in failing to address this issue and in failing to grant them summary judgment since in bringing suit, Ceccarelli and McClellan did not comply with OCGA § 14-3-742 (a) of the Georgia Nonprofit Corporation Code. It provides: "No derivative proceeding may be commenced until: (1) A written demand has been made upon the corporation to take suitable action; and (2) Ninety days have expired from the date the demand was made unless the complainant has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90 day period."

No cases have been decided construing this provision of the Nonprofit Corporation Code as it relates to the issues before us. However, " 'unless otherwise specifically noted, the fundamental rules and principles of law of profit and business corporations are equally applicable to nonprofit corporations.' [Cit.]" *Southeast Shippers Assn. v. Ga. Pub. Svc. Comm.*, 211 Ga. 550, 555 (87 SE2d 75) (1955). Accordingly, we apply authorities relating to business corporations where necessary for our analysis.

(a) Our first determination is whether the claim asserted by McClellan and Ceccarelli was derivative in nature. In a nonprofit derivative suit, a member asserts for the corporation's benefit rights or remedies belonging to the corporation, not to the member. See 12B Fletcher, Cyclopedia of the Law of Private Corporations, § 5908 (rev. ed. 1995). The wrong which the action seeks to redress is one which the corporation, not the individual, has sustained. Id. The member is a mere nominal party, having no right, title or interest in the claim itself. Id. One of the primary underlying reasons for the derivative action — especially applicable to nonprofits — is to avoid a multiplicity of lawsuits. See *Thomas v. Dickson*, 250 Ga. 772, 774 (301 SE2d 49) (1983).

The determination of whether a claim is derivative or direct "is made by looking to what the pleader alleged. It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990).

McClellan and Ceccarelli contend the suit is one for injunctive relief brought by individuals denied their rights to a fair election procedure. While their prayers included requests for an accounting and access to the membership list, for which a direct action generally would lie, see *Smith v. Conley*, 158 Ga. App. 191, 192 (1) (279 SE2d

491) (1981), prayers for relief are disregarded in determining whether the action is direct or derivative. 12B Fletcher, supra, § 5912. Moreover, the accounting and membership issues were incidental to the gravamen of the complaint which was that Dunn and Bigley breached their fiduciary duties in the management of the corporation by wrongfully controlling the election results. The general rule is that breach of fiduciary duty actions against corporate officers for harm to the corporation are derivative and not direct. *Phoenix Airline Svcs.*, supra at 585.

A member or director of the association could bring a direct action only if he suffered a special injury as a result of the breach of fiduciary duty. *Holland v. Holland Heating &c.*, 208 Ga. App. 794, 797 (3) (432 SE2d 238) (1993). "[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation. [T]o set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other [members], or a wrong involving a contractual right of a [member] which exists independently of any right of the corporation. For a plaintiff to have standing to bring an individual action, he must be injured directly or independently of the corporation." (Citations and punctuation omitted.) *Phoenix Airline Svcs.*, supra at 586; *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994).

Association members enjoy an individual right to vote their unit/weeks, and a direct action could be maintained by them against the directors who allegedly wrongfully invalidated their votes. See 12B Fletcher, supra, § 5915; *Gieselmann v. Stegeman*, 443 SW2d 127, 131 (Mo. 1969). Those invalidated unit/weeks holders are not parties to this suit. While Ceccarelli purportedly brought suit individually "and on behalf of more than 300 proxies of Lake Tara Townhouse Association, III, Inc.," the proxies are not by this designation made parties to this action. See *Dinkler v. Jenkins*, 223 Ga. 807 (2) (158 SE2d 381) (1967). Moreover, McClellan and Ceccarelli do not maintain that their individual votes were invalidated. Accordingly, they have no standing to assert a direct action on behalf of the proxies.[3]

The right to fair and reasonable election procedures inures to the benefit of all members, and absent the circumstances cited above, a director's interference with elections does not constitute a separate and distinct injury creating a right of direct action in an individual

---

[3] McClellan and Ceccarelli made no attempt to have their suit characterized as a class action under OCGA § 9-11-23 to legitimate their claim of representing the 300+ proxy votes. The court would likely have denied the motion on the ground that McClellan and Ceccarelli could not represent a class they were not members of, as discussed above.

member.[4] In this instance particularly, the alleged wrongdoing is an injury suffered primarily by the association as a whole: If Ceccarelli replaced Bigley on the board, the balance of power would shift between the two competing interests who were vying for the right to determine the management company for the association.

Only if Dunn and Bigley had owed Ceccarelli and McClellan special fiduciary duties apart from those generally owed by officers or directors to members would they have a direct action. Otherwise, the directors did not owe them any special duties merely because Ceccarelli was a candidate for office. See *Stricker v. Epstein*, 213 Ga. App. 226, 230 (3) (444 SE2d 91) (1994). See also *Burke v. Tenn. Walking Horse Breeders' &c.*, Case No. 01A01-9611-CH-00511, 1997 WL 277999 (Tenn. App. May 28, 1997) (candidate for director of nonprofit corporation lacked standing to bring declaratory judgment action on election procedure and his failure to make written demand was fatal to derivative action). Compare *Adams v. Meyers*, 620 NE2d 1298 (Ill. App. 1993) (unsuccessful candidate for board of nonprofit corporation brought derivative action to challenge election-related expenditure; action dismissed for failure to make written demand; candidate did have standing to bring declaratory action challenging election procedures, but failed on the merits).[5] Interference with Ceccarelli's candidacy was an indirect injury, and indirect injuries to a member or director resulting from direct injury to the corporation do not give rise to a direct action. See 12B Fletcher, supra, § 5911. The court accordingly erred in failing to find the action was derivative.[6]

(b) We turn to whether McClellan and Ceccarelli were required to follow the procedural mandates of OCGA § 14-3-742 (a), by making written demand on the corporation to take action, and waiting 90 days before commencing suit, or if for some reason they were excused from these requirements.

Earlier versions of the Business Corporation Code permitted a shareholder to be excused from the demand requirement if he alleged what efforts he had made to secure initiation of the action by the directors, or why such efforts had not been made. See OCGA § 14-2-

---

[4] If the defendant does not assert that the claim was derivative, the court may treat the action as properly brought. 12B Fletcher, supra, § 5912. See *Ahn v. Lee*, 221 Ga. App. 247 (471 SE2d 38) (1996), a declaratory action brought by directors against other directors challenging a nonprofit corporation's director election results. The action was brought directly, not derivatively, but the issue was not raised.

[5] Here no party seeks a declaratory judgment pursuant to OCGA § 9-4-1 et seq.

[6] OCGA § 14-3-741 provides, "A derivative proceeding may be brought either by any director or by any member or members having 5 percent or more of the voting power or by 50 members, whichever is less." We note that under this Code section, had the action been brought derivatively, it would have properly been dismissed against Ceccarelli. Only McClellan would have had standing, since Ceccarelli was not a director and presumably did not own five percent or more of the voting power of the association.

123 (c) (repealed). Usually, they had unsuccessfully attempted to seek redress within the corporation, and since it would have been futile to make demand on the wrongdoers, they were excused from the demand requirement. See *Harris v. Eagle-Bridges Co.*, 212 Ga. 599 (94 SE2d 381) (1956); *Thrift v. Maxwell*, 162 Ga. App. 237, 239 (2) (290 SE2d 301) (1982).

When the Business Corporation Code was revised in 1988, a provision was included mandating ante litem demand be made on the corporation before a derivative suit could be instituted. OCGA § 14-2-742 (1). In 1991, when the nonprofit business corporations code was completely overhauled, provisions for derivative suits were included for the first time. OCGA § 14-3-742 (a) (1) mirrors OCGA § 14-2-742 (1) except that references to "shareholders" refer to "members" in the nonprofit code. Although we have found no case precisely on point relating to either OCGA § 14-2-742 or § 14-3-742, we have observed that the demand requirement is a "procedural prerequisite for asserting [a derivative] claim [under OCGA § 14-2-742 (1)]." *McGregor v. Stachel*, 200 Ga. App. 324, 325 (1) (408 SE2d 118) (1991). Furthermore, the comments to OCGA § 14-2-742, which are persuasive authority, see *McKoon v. Jones*, 214 Ga. App. 40, 41 (447 SE2d 50) (1994), state the provision requires that "the demand shall be in writing." OCGA § 14-2-742, comment 1. "This explicit requirement removes any doubt about the necessity of demand in cases in which such demand should arguably be excused as futile." Kaplan's Nadler, Ga. Corporations, Limited Partnerships & Limited Liability Companies, § 14-17 (1996 ed.). We accordingly conclude that the "doctrine of futility," as it is known in some states,[7] is not applicable in Georgia to business or nonprofit corporation derivative claims. McClellan and Ceccarelli were required to follow the procedures of OCGA § 14-3-742, and the court erred in not entering summary judgment in favor of Dunn and Bigley.

2. Our disposition in Division 1 renders the remaining enumerations in this case and in Case No. A97A0153 moot.

*Judgment reversed in Case No. A97A0152. Appeal dismissed as moot in Case No. A97A0153. McMurray, P. J., concurs. Smith, J., concurs in the judgment only.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 24, 1997 —

---

[7] See *Moran v. Household Intl.*, 490 A2d 1059, 1071 (Del. 1985); *Powell v. Gant*, 556 NE2d 1241 (Ill. App. 1990).

*Ronald S. Stevens, William C. Hoitink,* for appellants.
*Donald B. Kuperman,* for appellees.