A03A2229, A03A2230. BAPTIST CONVENTION OF THE STATE OF GEORGIA et al. v. SHORTER COLLEGE et al.; and vice versa.
(596 SE2d 761)

MIKELL, Judge.

Shorter College in Rome ("the college") and the Baptist Convention of the State of Georgia ("GBC") are embroiled in a dispute over governance of the college.[1] Many claims have been raised which remain for resolution by the trial court. This appeal is from the grant of summary judgment to the college on the GBC's request to enjoin the college from dissolving without the GBC's approval. For the

---

[1] The defendants/appellants are the GBC, its Executive Committee, the Georgia Baptist Convention Programs, and the Georgia Baptist Foundation. The plaintiffs/appellees are Shorter College and Shorter College Foundation, Inc.

reasons set forth below, we reverse for the entry of summary judgment in favor of the GBC and remand for the trial court to set aside the dissolution.

The dispute at issue arose in 2001, and it concerns the process by which the college's trustees are selected. The college's charter, as amended in 1959, provides that the "corporation shall be managed, operated and controlled by a Board of Trustees" and that all trustees "shall be elected by [the GBC]." The GBC and the college collaborated on the selection process from 1959 until 2001. During that time, the college submitted names of candidates to the GBC's nominating committee, which then chose trustees from that list.

The collaborative process eroded in 2001. The college alleges that the GBC rejected candidates proposed by the college in favor of GBC's own choices and that the GBC's undue influence jeopardized the college's accreditation status with the Southern Association of Colleges and Schools ("SACS"). The college maintains that it was required to address the issue of the GBC's influence upon the college's governance before the scheduled 2002 decennial accreditation review.

During January 2002, the college leased its assets to the Shorter College Foundation, Inc. ("Foundation"), creating a self-perpetuating board of trustees which would control the college. Displeased, the GBC, which alleges that it has provided $26 million to the college, cut off funding. The college rescinded the lease.

Shortly thereafter, SACS reviewed the college and issued a report raising concerns about its lack of independence from the GBC. In response, the college's board of trustees amended its bylaws on May 31, 2002, to gain more control over the selection process. Pursuant to the new bylaws, the college selected sixteen candidates to fill eight trustee positions and submitted its list to the GBC. At its annual meeting on November 12, 2002, the GBC rejected the college's proposed candidates, and instead elected eight others to serve as trustees.

The GBC contends that the college refused to seat the trustees selected by the GBC. At a meeting held on November 22, 2002, the board of trustees voted to dissolve the college. The plan of dissolution involved transferring all assets and liabilities to the Foundation, which would control the college through its own board of trustees.

According to the college, the GBC withheld funding from the college after learning of the plan. The college filed a declaratory judgment action, claiming the GBC held at least $8.3 million in trust for its benefit. The college also sought an accounting, to remove GBC's trustees, and damages for breach of contract and breach of trust. The GBC answered and counterclaimed, seeking an injunction to stop the college from implementing its dissolution plan and asserting claims

of tortious interference with contract, conversion, breach of fiduciary duty, fraud, and civil RICO. Seven trustees intervened as counter-claim plaintiffs, including five trustees who dissented to the dissolu-tion, and two trustees whom the GBC had elected on November 12 to fill two vacancies, but whom the college refused to seat.

Initially, the trial court issued a temporary restraining order ("TRO") barring the college from implementing its dissolution plan. The parties engaged in discovery and filed cross-motions for sum-mary judgment on the GBC's claim for injunctive relief. A hearing was held on March 24. On April 22, the trial court issued the order from which the GBC appeals, granting the college's motion for summary judgment and lifting the TRO. The college filed a dissolu-tion plan with the secretary of state the following day, and on April 24, 2003, the secretary of state issued a certificate of dissolution to the college, nunc pro tunc to April 23. Although the college has filed a cross-appeal, which has been docketed separately, the arguments in both cases overlap. Therefore, we consolidate these appeals in a single opinion.

1. The college has moved to dismiss this appeal as moot on the ground that the dissolution has taken place. In support of this proposition, the college cites the following Supreme Court authority:

It is a rather fundamental rule of both equitable jurispru-dence and appellate procedure, that if the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot. To prevent such an appeal from becoming moot the appealing party must obtain a supersedeas.[2]

As contrary authority, the GBC relies upon *Radio Webs, Inc. v. Tele-Media Corp.*,[3] in which the Supreme Court held that the appel-lant's failure to seek supersedeas did not preclude the assertion of jurisdiction. We endeavor to reconcile these cases. In the above-quoted case, *Jackson v. Bibb County School Dist.*, the trial court denied a request to enjoin the sale of 130 acres of land.[4] While all parties were still in court, defense counsel announced his intention to consummate the sale that same day: "Just so everybody will know where we're coming from. *Filing notice of appeal is not enough to stop that, and we intend to go ahead right now and close this thing.*"[5] Under those circumstances, the Court held that it was incumbent

---

[2] *Jackson v. Bibb County School Dist.*, 271 Ga. 18, 19 (515 SE2d 151) (1999).

[3] 249 Ga. 598 (292 SE2d 712) (1982).

[4] *Jackson*, supra at 18.

[5] (Punctuation omitted; emphasis in original.) Id. at 19.

upon the plaintiffs to seek a supersedeas, pursuant to OCGA § 9-11-62 (c), to prevent an immediate sale of the property.[6]

In *Radio Webs*, the Court held that "obtaining a supersedeas is not necessarily determinative of the mootness issue[;] we will proceed case by case and not require its pursuance in every case."[7] Thus, even though the sale that the plaintiff had sought to enjoin had already taken place, and the plaintiff had failed to seek supersedeas, the Court refused to dismiss the plaintiff's appeal. The Court reasoned that, because the appeal was from the denial of a temporary injunction, judicial economy dictated deciding the controlling legal question rather than waiting for the same issue to arise on appeal from denial of the permanent injunction.[8]

The particular circumstances in *Radio Webs* are not present in this case, but we nevertheless find the "case by case" approach appropriate. Moreover, *Jackson* is distinguishable. In this case, the trial court did not announce its ruling from the bench but instead took the matter under advisement. The order dissolving the TRO was entered on April 22, 2003, and the college filed articles of dissolution with the secretary of state the following day. A certificate of dissolution was issued nunc pro tunc effective April 23. Counsel for GBC avers that he was not notified when the order was issued but received it in the mail on April 23.[9] Therefore, the GBC's counsel did not have the same notice as counsel for the appellant in *Jackson*, and we need not dismiss this appeal under its authority. Instead, we proceed under the "case by case" approach permitted by *Radio Webs*. The college's motion to dismiss this appeal as moot is denied.[10]

2. The relationship between the parties is governed by the Georgia Nonprofit Corporation Code[11] ("Nonprofit Code"), which was enacted in 1991, as well as the college's amended charter. Nonprofit corporations have "members" rather than shareholders.[12] Construing the charter in the context of the Nonprofit Code, the trial court ruled that the GBC was a member. However, the court also ruled that

---

[6] Id.

[7] *Radio Webs*, supra at 604 (2).

[8] Id.

[9] Affidavits attached to briefs may be considered for the purpose of determining mootness. *Ring v. Williams*, 192 Ga. App. 329 (1) (384 SE2d 914) (1989). The GBC applied for an emergency stay in this court on April 25. However, the appeal had not yet been docketed and the Court did not have the benefit of the record. Therefore, the motion was denied as moot.

[10] See also *Atlanta Journal-Constitution v. State*, 266 Ga. App. 168 (1) (596 SE2d 694) (2004) (although prosecution had ended, dispute concerning restrictive order entered in case held "capable of repetition, yet evading review"; this Court's dismissal of appeal as moot reversed by Supreme Court).

[11] OCGA § 14-3-101 et seq.

[12] OCGA § 14-3-140 (20).

the GBC was not entitled to vote on dissolution of the college. The parties enumerate these rulings as error.

(a) We first determine whether the GBC is a member of the college. In the Nonprofit Code,

> "Member" means (without regard to the name by which a person is designated in the articles or bylaws) any person who is entitled to vote for the election of a director or directors pursuant to a provision of the corporation's articles or bylaws that expressly provides for or contemplates the existence of members.[13]

This definition has two components. First there must be a "person," which is defined as an individual and an entity,[14] who is entitled to vote for directors, or, in the case of the college, trustees.[15] The GBC satisfies this component because the college's charter, as amended in 1959, provides that the college "shall be managed, operated and controlled by a Board of Trustees," and that all trustees "shall be elected" by the GBC.

As noted above, the second component of the definition requires that a provision of the corporation's articles or bylaws either expressly provide for or contemplate the existence of members. The amended charter, which predates the enactment of the Nonprofit Code by three decades, does not expressly provide for members. Therefore, the question is whether members are contemplated. A corporate charter is a contract,[16] and the cardinal rule of contract construction is to ascertain the intent of the parties.[17] Here, the charter requires each trustee to be a member of a Baptist Church that is affiliated with the GBC; requires the college to obtain the GBC's written approval prior to incurring debt in excess of the amount appropriated by the GBC; and prohibits the trustees from amending the charter without a resolution passed by the GBC. In addition, the preamble to the charter states: "Whereas, it is considered advisable by the Board of Trustees of Shorter College, that by amendment to the charter of said Shorter College, . . . the actual ownership and control of said Shorter College be transferred unto [the GBC]." Although the transfer was never accomplished, the preamble sheds light on the

---

[13] Id.

[14] OCGA § 14-3-140 (23).

[15] See Comment, OCGA § 14-3-801: "Boards of directors of nonprofit corporations are sometimes called boards of trustees."

[16] See, e.g., *Fleetwood v. Wieuca North Condominium Assn.*, 182 Ga. App. 15, 17 (1) (354 SE2d 623) (1987) (condominium association declaration and bylaws deemed written contract).

[17] *Eckerd Corp. v. Alterman Properties, Ltd.*, 264 Ga. App. 72, 76 (2) (589 SE2d 660) (2003).

parties' intention to confer membership status upon the GBC. In view of the powers granted to the GBC in the charter, and construing the charter in light of the Nonprofit Code, we hold that the trial court did not err in determining that the GBC is a "member" of the college.[18]

(b) We next turn to the question of whether, as a member of the college, the GBC had the right to vote on the dissolution. If the corporate action taken by the college had been a bona fide dissolution, an issue we address in the following division, then the answer would be no. A nonprofit corporation's "board of [trustees] may propose dissolution for submission to the members, if there are members entitled to vote thereon."[19] Conversely, nonprofit corporations that do not have members entitled to vote on dissolution need only obtain approval from a majority of the trustees, following certain statutory procedures.[20] The Nonprofit Code provides that members "shall have no voting rights, other than to elect directors, except as specifically provided in the articles or bylaws."[21] The charter gives the GBC the right to approve any amendment to the charter but does not specifically mention dissolution. Therefore, the trial court did not err in ruling that the GBC did not have the right to vote on dissolution. However, the trial court erred in failing to consider the GBC's contention that the dissolution was a sham.

3. The GBC argues that the dissolution was a de facto merger or disposition of assets, not a true dissolution, and therefore had to be approved by the GBC. In Georgia, a nonprofit corporation cannot adopt a plan of merger or "sell, lease, exchange, or otherwise dispose of all, or substantially all, of its property . . . other than in the usual and regular course of its activities" without the approval of any entity whose approval is needed for amendment of the bylaws.[22] As noted above, the college's charter cannot be amended without the GBC's approval, and the college does not dispute that the GBC's approval would have been required for a merger or disposition of property other than a dissolution. The college argues, however, that because it complied with all statutory procedures essential to accomplish a dissolution, the transaction withstands judicial scrutiny.

---

[18] See, e.g., *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46 (74 NW2d 286, 296 (2)) (1955) ("It is doubtful if any membership . . . right is any more important than the right to vote for the election of the directors . . . who carry on and conduct the business of the corporation."). Nor did the trial court err in ruling that the college's amendment to the bylaws on May 31, 2002, requiring that trustee candidates be screened and approved by the college, was void without the GBC's approval as inconsistent with the charter.

[19] OCGA § 14-3-1402 (a).

[20] OCGA § 14-3-1402 (b), (c).

[21] OCGA § 14-3-610.

[22] OCGA §§ 14-3-1103 (a) (3) (merger); 14-3-1202 (b) (3) (sale, lease, or other disposition of property).

Resolution of this issue necessitates examining common law concepts of dissolution and merger, issues upon which Judge Bleckley expounded eloquently in 1878: "Have we the same old corporation, or a new one with the old name?... In contemplation of law, life is no less essential to artificial persons than to natural persons. Bodies corporate are not dead bodies, but living persons. When they die they are annihilated."[23] Judge Bleckley defined merger as "the extinction of one corporation, and the absorption of its stock, assets, etc., by the other."[24] He stated that "[m]erger may be compared to extinguishing one of two lighted torches, and combining its materials with the other."[25] The Arizona Supreme Court followed similar precepts in 1909 while pondering a situation similar to the one at bar:

> "Dissolution" of a corporation denotes its complete destruction, and [connotes] the liquidation and distribution of its assets. The reorganization here attempted did not contemplate the termination of the corporate business, nor liquidation and distribution. It was an attempt to continue the corporate business under a new corporate entity. . . . This is not a dissolution.[26]

In this case, it is clear from the record that the college intended to continue its functions under a new corporate entity. The chair of the college's board of trustees stated as much in a letter to her fellow trustees on November 14, 2002. The letter notifies the trustees of two proposals that they would be asked to approve at the meeting on November 22:

> The first proposal seeks the Board's approval to reorganize the College. This corporate reorganization will be accomplished by dissolving the corporate entity "Shorter College" and simultaneously . . . distributing all of the College's assets and assigning all of its liabilities to [the Foundation]. The Foundation, which will immediately be renamed "Shorter College," will thereafter carry on all of the business and activities previously conducted by the College.

Borrowing a phrase from a recent Supreme Court opinion,[27] we endorse Judge Bleckley's nineteenth century definitions and apply

---

[23] *State v. Atlantic & Gulf R. Co.*, 60 Ga. 268, 274 (1878).

[24] Id. at 274.

[25] Id. at 275.

[26] *Farish v. Cieneguita Copper Co.*, 12 Ariz. 235 (100 P. 781, 783) (1909).

[27] *State v. Varner*, 277 Ga. 433 (589 SE2d 111) (2003).

them to our twenty-first century dilemma. The "new" Shorter College is, as the chair's letter demonstrates, the same old corporation with a new name. One of the lighted torches, the "old" Shorter College, has merely been extinguished, and its assets transferred to the new company. This corporate reorganization is either a merger or a disposition of assets under the Nonprofit Code. It is not a true dissolution. Absent the GBC's approval, it cannot stand.

The college contends that the dissolution was justified under OCGA § 14-3-1430 because it was necessary to resolve the deadlock in the management of corporate affairs. However, that Code section provides that a *member* may seek judicial dissolution of the corporation in the event that the directors are deadlocked.[28] That is not the case here; the GBC is the only member, and it does not seek dissolution. Accordingly, we reverse the grant of the college's motion for partial summary judgment and the denial of the GBC's motion.

In fashioning a remedy, we note that both the college's complaint and the GBC's answer and counterclaim include a prayer for "such other and further relief" as may be necessary and proper. The proper relief, at this stage of the litigation, is that the dissolution be set aside. Therefore, the cases are remanded to the trial court with instructions to set aside the dissolution as ultra vires pursuant to OCGA § 14-3-304 (c).

*Judgments affirmed in part and reversed in part and cases remanded with direction. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 17, 2004 — 

*Arnall, Golden & Gregory, Walter H. Bush, Jr., Andrew B. Flake, Jason E. Bring, Sutherland, Asbill & Brennan, J. D. Fleming, Jr., Richard L. Robbins, Smith, Shaw & Maddox, John M. Graham III,* for appellants.

*McKenna, Long & Aldridge, Bruce P. Brown, Arnall, Golden & Gregory, Thomas O. Duvall, Jr., David F. Guldenschuh,* for appellees.