S04G1291. SHORTER COLLEGE et al. v. BAPTIST CONVENTION OF GEORGIA et al.
(614 SE2d 37)

CARLEY, Justice.

In 1959, Shorter College (College) amended its charter to confer on the Baptist Convention of the State of Georgia (GBC) the exclusive authority to name the school's Board of Trustees (Board). As a result of the grant of this power to choose the trustees, GBC assumed the status of a "member" of the College. OCGA § 14-3-140 (22). Over the years, GBC and the College collaborated in the trustee selection

process. In 2001, however, a conflict arose as to GBC's exercise of its authority under the charter to fill two vacancies on the Board. The controversy was precipitated by the Southern Association of Colleges and Schools, which questioned the College's independence and threatened its accreditation because the power to select trustees was vested in GBC.

The dispute culminated in GBC's rejection of candidates proposed by the College and the naming of two new trustees who lacked the prior approval of the school. Contending that GBC's power to select the trustees was an encroachment on the independence of the institution which endangered its accreditation, the Board thereafter sought to amend the bylaws to allow the school some input into the process. However, GBC insisted on continued exercise of the exclusive authority granted to it by the charter, and it named several new trustees to the Board.

The College refused to recognize the new trustees selected by GBC. Instead, a majority of the "old" Board approved a plan, denominated as a "dissolution" of the College, whereby all assets of the school, including its name, would be transferred for no consideration to the Shorter College Foundation (Foundation). From the perspective of the "old" Board and its concern about accreditation, this transfer had the desired effect of divesting GBC of its authority to name the trustees, since the Foundation's directors would not be subject to approval or removal by GBC.

Thereafter, the College and Foundation filed suit to recover certain pre-dissolution funds that GBC had budgeted for the school's use. GBC answered and counterclaimed, seeking to enjoin the unilateral dissolution of the College by the "old" Board as a void transaction. The validity of the dissolution was addressed on motion for summary judgment, and the trial court granted judgment in favor of the College and Foundation. On appeal, however, the Court of Appeals reversed, concluding that "[t]his corporate reorganization is either a merger or a disposition of assets under the Nonprofit Code. It is not a true dissolution. Absent . . . GBC's approval, it cannot stand." *Baptist Convention &c. of Ga. v. Shorter College,* 266 Ga. App. 312, 319 (3) (596 SE2d 761) (2004). The College and Foundation (Appellants) applied for certiorari, which we granted in order to determine whether the Court of Appeals correctly held that the Board's effort to effect a "dissolution" of the College was invalid.

1. "[A] corporation is an artificial, not a natural, person." *Eckles v. Atlanta Technology Group,* 267 Ga. 801, 803 (2) (485 SE2d 22) (1997). As such, a corporation cannot experience a natural death, but it can undergo a "dissolution," which

implies the termination of its existence and its utter extinction and obliteration as an entity or body in favor of which obligations exist or accrue or upon which liability may be imposed. Liquidation of a corporation has been defined to mean the winding up of the affairs of the corporation by reducing its assets, paying its debts, and apportioning the profit or loss. A distribution of all assets is a "winding-up of the affairs" of the corporation and is synonymous with "liquidation."

19 AmJur2d, Corporations, § 2348, pp. 453-454 (2004). This definition of a "dissolution" as the winding up and liquidation of all business affairs applies equally to both for-profit and non-profit corporations in Georgia. OCGA §§ 14-2-1405, 14-3-1406.

The transaction at issue in this case would not constitute a "dissolution" in the context of for-profit corporations. The transfer of the assets of the College to the Foundation was not for the purpose of terminating the existence of the school and winding up its affairs, as would have occurred had the intended recipient been another educational institution already having a separate and independent existence, such as Emory, Mercer, Berry or any number of other colleges located in this state. Indeed, the aim of this "dissolution" was the exact opposite. The Board's intent was the preservation of the assets of the College and the continuation of its existence, with the only anticipated result being the transfer of governing authority over the institution to the Foundation and the consequent termination of the power granted by the charter to GBC to select the trustees. As the Court of Appeals noted, the chair of the Board frankly acknowledged that this was the purpose of the "dissolution" in the following excerpt from a letter sent to her fellow trustees notifying them of two proposals that would be submitted for their approval at an upcoming meeting:

> The first proposal seeks the Board's approval to *reorganize the College.* This *corporate reorganization* will be accomplished by dissolving the corporate entity "Shorter College" and simultaneously . . . distributing all of the College's assets and assigning all of its liabilities to (the Foundation). The Foundation, which will immediately be renamed "Shorter College," will *thereafter carry on all of the business and activities previously conducted by the College.* (Emphasis supplied.)

*Baptist Convention &c. of Ga. v. Shorter College,* supra at 318 (3). Such a "reorganization" fails to qualify as a valid "dissolution" of a

for-profit corporation because the end result is not the extinction of any former business, but the mere transfer of the same business to another entity which thereafter will continue its operation.

> The reorganization here attempted did not contemplate the termination of the corporate business, nor liquidation and distribution. It was an attempt to continue the corporate business under a new corporate entity . . . . This is not a dissolution. [Cit.]

*Baptist Convention &c. of Ga. v. Shorter College,* supra at 318 (3) (citing authority applicable to for-profit corporations). Simply put, while the assets of a dissolving for-profit corporation can be transferred, its underlying business cannot survive a "dissolution" since its commercial affairs must be wound up and liquidated. "Bodies corporate are not dead bodies, but living persons. When they die they are annihilated. Among artificial persons there is no resurrection from the dead . . . ." *State of Ga. v. The Atlantic and Gulf R. Co.,* 60 Ga. 268, 274 (1878). Thus, at least in the context of for-profit corporations, "dissolution" and "reorganization" are completely incompatible concepts.

It appears, therefore, that resolution of this case depends upon whether there is any legal distinction to be drawn between the dissolution of a for-profit and a non-profit corporation. The current Georgia Nonprofit Corporation Code "was drawn principally from the Georgia Business Corporation Code" and reflects "the desire to conform [it] to the Business Code whenever possible and appropriate . . . ." Comment to OCGA § 14-3-101. See also 2 Kaplan's Nadler, Ga. Corps., Lim. Parts. and Lim. Liab. Cos. (1999 ed.), § 14-2, p. 21. Thus, " ' "unless otherwise specifically noted, the fundamental rules and principles of law of profit and business corporations are equally applicable to nonprofit corporations." (Cit.)' [Cit.]" *Dunn v. Ceccarelli,* 227 Ga. App. 505, 507 (1) (489 SE2d 563) (1997). See also *Southeast Shippers Assn. v. Ga. PSC,* 211 Ga. 550, 555 (1) (87 SE2d 75) (1955) (applying prior law).

With specific regard to OCGA § 14-3-1406, nothing in the language of that provision indicates that the meaning of "dissolution" differs in any substantive particular from its for-profit counterpart in OCGA § 14-2-1405. Indeed, the wording of the two statutes is essentially identical, and the Comment to OCGA § 14-3-1406 specifies that it "is based on section 14-2-1405 of the [Georgia] Business [Corporation] Code[, OCGA § 14-2-101 et seq.]." As statutes which are in pari materia, OCGA §§ 14-2-1405 and 14-3-1406 must be construed together and harmonized wherever possible. *Schrenko v. DeKalb County School Dist.,* 276 Ga. 786, 790 (1) (582 SE2d 109) (2003); *Ga. Forestry*

*Comm. v. Taylor*, 241 Ga. App. 151, 153 (526 SE2d 373) (1999). Because the "wind up and liquidate" language of OCGA § 14-3-1406 was borrowed verbatim from OCGA § 14-2-1405, the "dissolution" of non-profit and for-profit corporations must necessarily be analogous in that particular aspect. See *Knight v. State of Ga.*, 992 F2d 1541, 1545 (II) (C) (1) (11th Cir. 1993). Therefore, the Court of Appeals correctly held that the effort to reorganize the College, which clearly would not qualify as a dissolution of a for-profit corporation, was likewise not a valid "dissolution" of a non-profit corporation within the meaning of OCGA § 14-3-1406.

This is true even though, under OCGA § 14-3-1402 (b), the Board had the unilateral power to approve a dissolution of the College. See *Baptist Convention &c. of Ga. v. Shorter College*, supra at 317 (2) (b). The mere fact that, as a procedural matter, a majority of the trustees could and did vote in favor of the "dissolution" is not dispositive. The question is whether the transaction was in fact a legally valid "dissolution," and the nomenclature used by the Board certainly is not controlling in that regard. Instead, a corporate dissolution is a "statutory procedure[ ], [so] the statutory requirements must be complied with to accomplish an effective dissolution." Kaplan's Nadler, supra at § 14-35, p. 62. Under OCGA § 14-3-1406, the winding up and liquidation of the business affairs of the dissolving non-profit corporation is one of those requirements. That statutory prerequisite to the effectiveness of a "dissolution" was not satisfied here, notwithstanding the Board's determination to denominate the transaction as such. Because the transfer of the College's assets to the Foundation did not meet substantive requirements of OCGA § 14-3-1406, the trustees' compliance with any of the procedures applicable to the "dissolution" of a non-profit corporation is immaterial.

Appellants urge that, because a non-profit corporation does not have financial goals, it is inequitable to require the same complete destruction of the underlying business as with the dissolution of a for-profit corporation. However, the relevant inquiry is the statutory definition of "dissolution" and, in that regard, the specific wording used by the General Assembly, not general concepts of equity, is the controlling factor. "As long as the [statutory] language is clear and does not lead to an unreasonable or absurd result, 'it is the sole evidence of the ultimate legislative intent.' [Cit.]" *Ray v. Barber*, 273 Ga. 856 (1) (548 SE2d 283) (2001). Under applicable statutes, the business of a corporation, regardless of whether it is operated for profit or not, cannot survive a valid "dissolution." Pursuant to OCGA § 14-3-1402 (b), the trustees had every right to vote to dissolve the College and to transfer its assets intact or piecemeal to other separate and independent educational institutions. Such a transfer would perpetuate the underlying beneficial purpose for which the school

was created, notwithstanding its own extinction. Under OCGA § 14-3-1406, however, the Board was not authorized to reorganize the school by transferring its assets to the Foundation for the purpose of maintaining the College as a functioning educational institution.

2. OCGA § 14-3-1406 (5) requires that a dissolving non-profit corporation "wind up and liquidate its business and affairs," which is exactly what a dissolving for-profit corporation must do under OCGA § 14-2-1405 (5). Also, both of our appellate courts previously have held that legal principles should apply equally to both types of corporations unless otherwise expressly indicated. However, the dissent nevertheless concludes that "the legislature set forth different procedures for dissolving nonprofit and for-profit corporations, [so] it is wrong for this Court to mandate that they be the same." P. 474. As support for this assertion, the dissent notes that, while the assets of a dissolving for-profit corporation are conveyed to its shareholders under OCGA § 14-2-1405 (4), OCGA § 14-3-1403 (b) (3) provides, in relevant part, that certain specified assets of a dissolving non-profit corporation "shall be transferred or conveyed to one or more domestic or foreign corporations, trusts, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation."

Because a non-profit corporation does not have shareholders, the class of recipients authorized to receive its assets *upon dissolution* obviously cannot be the same as those who have a claim to the assets of a dissolving for-profit corporation. Because the recipients of a dissolving non-profit and for-profit corporation are different, the procedures for distribution of those assets must necessarily also differ. However, the differences in the composition of the class of those who have the ultimate claim on the assets of a dissolving corporation and in the procedures regarding the distribution of the assets to them do not have any material bearing on whether the underlying transaction upon which the distribution is based complies with the substantive requirements for accomplishing a corporate dissolution. Whether the distribution of a corporation's assets constitutes a valid dissolution is not determined by how and to whom the assets were conveyed.

As a matter of law, any dissolving corporation, whether or not for-profit, must wind up and liquidate "*its* business and affairs." (Emphasis supplied.) OCGA §§ 14-2-1405 (5), 14-3-1406 (5). The General Assembly has not otherwise expressly provided that, unlike for-profit corporations, a dissolving non-profit is entitled to perpetuate *its* business by means of a transfer of all assets to another corporation which will then continue to carry on the *identical* pre-dissolution activity as was formerly pursued by the previous corporate entity. Instead, OCGA § 14-3-1403 (b) (3) provides that a dissolving non-profit corporation is authorized to distribute its assets to

another corporation "engaged in activities *substantially similar* to those of the dissolving corporation." (Emphasis supplied.) Here, the Board did not comply with that statutory mandate by transferring the assets of the College to another corporation which was actually engaged in activities "substantially similar" to those of the purportedly dissolved corporation. Instead, the assets were transferred to the Foundation, which was incorporated for the express purpose of carrying on precisely the same activities formerly pursued by the corporation which the Board sought to dissolve.

That transfer was not pursuant to a valid dissolution accomplished pursuant to OCGA § 14-3-1406 (5). It constituted an unauthorized effort on the part of the Board to reorganize the College so as to operate the school as before, but with a new set of trustees. The dissent may be correct insofar as it suggests that the subjective intent of the trustees who approved the transfer was furtherance of the mission of the College. However, advancing the school's educational activities is simply not the legal test for determining whether the transaction satisfied the statutory requirements for a dissolution. A dissolution of the College could be accomplished only when "its" business and affairs were wound up and liquidated under OCGA § 14-3-1406 (5) and, pursuant to OCGA § 14-3-1403 (b) (3), when its assets had been transferred to another organization already engaged in "activities substantially similar" to those which it no longer was authorized to pursue.

3. The trustees of a non-profit corporation are charged with acting "[i]n a manner [he or she] believes in good faith to be in the best interests of the corporation . . . ." OCGA § 14-3-830 (1) (A). In this case, the Board fully complied with this standard of conduct, acting in the good faith belief that it was responding to a threat to the accreditation of the College. However, the underlying good faith of the trustees cannot substitute for objective compliance with applicable statutory requirements. Under OCGA § 14-3-1406, a valid "dissolution" of the College would accomplish a more definite and rapid end to the school's existence than the threatened loss of its accreditation. The only other option available to the trustees was to accede to GBC's insistence on the exercise of its exclusive authority under the charter to name the trustees. The Board did not have the power to fashion its own remedy by unilaterally transferring GBC's status and authority as a "member" of the College to the Foundation for the purpose of continuing to operate the school. Therefore, the Court of Appeals correctly reversed the grant of summary judgment in favor of Appellants and remanded the case to the trial court "with instructions to set aside the dissolution as ultra vires pursuant to OCGA § 14-3-304 (c)." *Baptist Convention &c. of Ga. v. Shorter College*, supra at 319 (3).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., and Hunstein, J., who dissent.*

FLETCHER, Chief Justice, dissenting.

The majority opinion holds that Shorter College's Board of Trustees complied with its governing documents, the Georgia Nonprofit Corporation Code,[1] and its fiduciary duties in dissolving the College and transferring its assets to the Shorter College Foundation. Nevertheless, the majority opinion holds that because the dissolution failed to pass a fourth test — compliance with dissolution requirements applicable to *for-profit* corporations — it was invalid. Because this fourth test is inapposite to nonprofits and unnecessary to prevent sham dissolutions, I dissent.

The majority errs by using a definition supplied by the American Jurisprudence treatise, rather than focusing on the requirements established by the Georgia legislature. The treatise itself cautions against relying on its definition to the exclusion of state statutes: "[w]hen evaluating corporate administrative dissolution statutes that vary widely from state to state, it cannot safely be assumed that the term 'dissolution' has any strict meaning independent of the jurisdiction and precise context in which that term is applied."[2] The majority opinion falls into this trap of ignoring context.

Because the procedure differs depending on which type of entity is being dissolved, the majority opinion is incorrect that "dissolution" means the same thing in Georgia's for-profit and nonprofit corporation codes. When a for-profit corporation is dissolved, its business ceases to exist and its remaining assets are distributed to its shareholders under OCGA § 14-2-1405 (4).[3] When a nonprofit is dissolved, however, there is a different procedure: instead of distributing the nonprofit's assets to its members, they are transferred to a similar business under OCGA § 14-3-1403 (b) (3).[4] Therefore, the nonprofit's business does *not* necessarily cease to exist, but may be carried on by a new corporation. Accordingly, the legislature made a nonprofit dissolution more closely resemble a transfer of assets or a reorganization than a for-profit dissolution.

---

[1] OCGA § 14-3-101 et seq.

[2] 19 AmJur2d, Corporations, § 2348, at 454 (2004).

[3] OCGA § 14-2-1405 (4) provides that, after making provision for or discharging its liabilities, a for-profit corporation distributes its "remaining property among its shareholders in accordance to their interests."

[4] OCGA § 14-3-1403 (b) (3) provides that, after making provision for or discharging its liabilities, a nonprofit corporation's assets "shall be transferred or conveyed to one or more domestic or foreign corporations, trusts, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation."

The majority opinion compares the dissolution procedures in OCGA § 14-2-1405 and OCGA § 14-3-1406 and states that "the wording of the two statutes is essentially identical." But one of the ways in which it is *not* identical is that OCGA § 14-3-1406, applicable to nonprofits, mandates dissolving in accordance with a "plan of dissolution." This plan of dissolution must comply with OCGA § 14-3-1403, and it is that statute that contains the pertinent difference regarding the disposition of assets in nonprofit and for-profit dissolutions. Because the legislature set forth different procedures for dissolving nonprofit and for-profit corporations, it is wrong for this Court to mandate that they be the same.

I agree with the majority opinion that the Board complied with the letter of the law by dissolving the College and transferring its assets to the Foundation. It is undisputed that the College's governing documents gave only the Board, and not the Baptist Convention of the State of Georgia (GBC), the right to vote on the College's dissolution. Further, under OCGA § 14-3-1402 (b), the Board alone had the right to dissolve the College. Therefore, the dissolution complied with the strict letter of the law.

I also agree with the majority opinion that compliance with the letter of the law is not enough in this case. We must also ask whether the dissolution complied with the spirit of the law. The test for this is whether the dissolution violated the Board's fiduciary duties.[5] A "sham" dissolution would violate these duties; a valid dissolution would not.

Because the College was a nonprofit, the Board owed its fiduciary duties to the College's mission, not to GBC as a member. GBC's contrary contention mistakenly equates "members" of a nonprofit corporation with "shareholders" of a for-profit corporation. In for-profit corporations, the predominant view is that the board of directors owes its fiduciary duties to the corporation's shareholders.[6] In nonprofit corporations, however, these duties are owed not to the members, but to the nonprofit's mission.

> It is axiomatic that the board of directors [of a nonprofit] is charged with the duty to ensure that the mission of the charitable corporation is carried out. This duty has been

---

[5] See OCGA § 14-3-830; *Developments in the Law – Nonprofit Corporations*, 105 HARV. L. REV. 1578, 1591 (1992) ("fiduciary duties are especially important in the nonprofit sector because . . . [they ensure] the use of corporate assets for corporate purposes").

[6] See, e.g., Lawrence E. Mitchell, *A Theoretical and Practical Framework for Enforcing Corporate Constituency Statutes*, 70 TEX. L. REV. 579, 586 (1992) (stating that "[t]here is probably no more frequently articulated principle of corporate law than that directors are fiduciaries of the corporation and its stockholders," but revealing good reasons why these duties should sometimes extend to other constituents as well).

referred to as the "duty of obedience." It requires the director of a not-for-profit corporation to "be faithful to the purposes and goals of the organization," *since "[u]nlike business corporations, whose ultimate objective is to make money, non-profit corporations are defined by their specific objectives. . . ."*[7]

Therefore, the question is whether the Board's actions furthered or hindered the College's mission.

The College's mission was "to provide quality higher education . . . integrat[ing] Christian values within a nurturing community. . . ." The record shows that the College had real reason to believe that it would lose accreditation if it did not address the accreditor's concerns over GBC's influence. The loss of accreditation would have a devastating effect on any college or university, including an inability to attract the best students and faculty and a loss of essential financial aid for students. By taking the actions it did, the Board addressed the accreditor's concerns over GBC's influence, removed the barrier to reaccreditation, and thereby furthered the College's mission of "providing quality higher education."

The Foundation will also carry out the College's religious mission by continuing to promote a nurturing, Christian environment in which students will learn. Accordingly, the dissolution furthered both the College's educational and religious missions, whereas ceding to GBC's wishes would have likely cost it accreditation and severely damaged its educational mission. The Board thus fully complied with its fiduciary duties, as the majority opinion concedes.

In sum, despite the dissolution having complied with both the letter and the spirit of nonprofit law, the majority opinion also requires compliance with the procedures for dissolving a for-profit corporation. These procedures are inapposite to nonprofit dissolutions. They are also unnecessary to prevent sham dissolutions; adherence to fiduciary duties accomplishes this purpose. Because the Board complied with the College's governing documents, applicable

---

[7] *Manhattan Eye, Ear & Throat Hosp. v. Spitzer*, 715 N.Y.S.2d 575, 593 (N.Y. Sup. Ct. 1999) (citations omitted; emphasis supplied). See also *Summers v. Cherokee Children & Family Svcs.*, 112 S.W.3d 486 (Tenn. Ct. App. 2002) (duty of loyalty requires that a director of a nonprofit faithfully pursue the interest of the organization, and its nonprofit purpose, rather than his or her own financial or other interests, or those of another person or organization); Nina J. Crimm, *A Case Study of a Private Foundation's Governance and Self-Interested Fiduciaries Calls for Further Regulation*, 50 EMORY L. J. 1093, 1140 (2001) ("fiduciary responsibilities require of each director [of a nonprofit] a duty of obedience to fulfill the particular charitable purposes of the corporation . . ."); Harvey J. Goldschmid, *The Fiduciary Duties of Nonprofit Directors and Officers: Paradoxes, Problems, and Proposed Reforms*, 23 IOWA J. CORP. L. 631, 641 (1998) (nonprofit directors "are principally concerned with the effective performance of the nonprofit's mission").

nonprofit dissolution law, *and* its fiduciary duties, the College's dissolution was proper and must stand.

I am authorized to state that Presiding Justice Sears and Justice Hunstein join in this dissent.

DECIDED MAY 23, 2005 —
RECONSIDERATION DENIED JUNE 30, 2005.

*McKenna, Long & Aldridge, Bruce P. Brown, Thomas B. Bosch, Smith, Shaw & Maddox, David F. Guldenschuh,* for appellants.

*Arnall, Golden & Gregory, Walter H. Bush, Jr., Thomas O. Duvall, Jr., Jason E. Bring, Andrew B. Flake, Sutherland, Asbill & Brennan, Richard L. Robbins, Valerie S. Sanders,* for appellees.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, J. Anderson Davis, Roy E. Barnes, Scott Colley,* amici curiae.