**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 23, 2017**

# In the Court of Appeals of Georgia

A16A1946. PRACTICE BENEFITS, LLC v. ENTERA HOLDINGS, LLC et al.

REESE, Judge.

Practice Benefits, LLC, ("Practice Benefits"), a member of a limited liability company, Entera Holdings, LLC ("Entera"), appeals from an order dismissing its complaint alleging breach of contract by Entera and breach of fiduciary duty by M. Clark Fain, III ("Fain"), Entera's manager. For the reasons set forth, infra, we reverse.

Practice Benefits alleged the following facts in its amended complaint against Entera and Fain. In 2010, J. Richard and Helen Hicks, Marty H. Jones, and Robert Hamilton entered into an operating agreement to form Entera and intended for each of the four owners, either individually or through his or her designated entity, to have one vote. A conflict arose during the organization process, and counsel for Entera

advised the parties to combine the ownership of Richard and Helen Hicks into an entity, Practice Benefits.

The members allowed Practice Benefits to exercise two votes in all business matters until Fain became the manager of Entera in 2013. Fain refused to allow an amendment to the governing documents to effect the original agreement that Practice Benefits have two votes and refused to allow Practice Benefits to cast two votes.

In 2013, Entera returned the entire initial capital contributions of the other original members, The Martin H. Jones Family Partnership, LP, and The Hamilton Group II, LLC, the designated entities for Jones and Hamilton. According to Practice Benefits, it too was entitled to return of its initial capital contribution. Entera did not return that contribution to Practice Benefits. Moreover, in 2014, Entera made distributions to all its members except for Practice Benefits, in violation of the provision in the operating agreement requiring pro rata distribution based on each members' percentage interest in Entera.

Practice Benefits filed suit against Entera and Fain, alleging breach of contract and breach of fiduciary duty and seeking injunctive relief, an accounting, damages, and costs. Entera filed a motion to dismiss the complaint for failure to state a claim

upon which relief could be granted,[1] on the ground that it was not a party to the operating agreement and thus could not be held liable for any alleged breaches thereof.

Fain also moved to dismiss the complaint, contending that the breach of fiduciary claims were derivative in nature because they impacted all members of Entera, collectively. According to Fain, the trial court thus lacked jurisdiction over the subject matter[2] because Practice Benefits did not allege that it had waited 90 days after demanding that Entera's board of directors take suitable action before filing suit, as required by OCGA §§ 14-11-801 (3) and 14-11-802.

Following a hearing, the trial court granted both motions to dismiss the complaint, finding that it lacked subject matter jurisdiction to consider the claims against Fain because they were derivative in nature, and that Entera was not a party to the operating agreement. Practice Benefits appealed.

A trial court's ruling on a motion to dismiss is reviewed de novo. Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor,

---

[1] See OCGA § 9-11-12 (b) (6).

[2] See OCGA § 9-11-12 (b) (1).

3

disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts.[3] With these guiding principles in mind, we turn now to the specific claims of error raised by Practice Benefits.

1. Practice Benefits argues that the trial court erred in granting Entera's motion to dismiss on the ground that it was not a party to the operating agreement because a limited liability company is subject to and bound by its operating agreement pursuant to OCGA § 14-11-101 (18).[4]

---

[3] *Barnett v. Fullard*, 306 Ga. App. 148-149 (701 SE2d 608) (2010) (citation omitted).

[4] Although Practice Benefits did not point out OCGA § 14-11-101 (18) in its argument to the trial court, it did argue that "Georgia courts . . . have allowed breach of contract claims based on breach of an operating agreement against a limited liability company for breach of the operating agreement that governs it." See *ULQ, LLC v. Meder*, 293 Ga. App. 176, 178-180 (1) (666 SE2d 713) (2008) (affirming denial of limited liability company's motion for summary judgment on former officer's breach-of-contract claim because its manager was bound to exercise good faith in determining officer's removal was in company's best interests where the operating agreement did not give manager absolute discretion in removal of officers); *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (2) (612 SE2d 17) (2005) (evidence supported jury verdict on breach-of-contract claim where it was "undisputed that under the [o]perating [a]greement, [a former member] was entitled to one-third of the accounts receivable as of the effective date of its resignation, . . . and that the [company] had not paid [the former member] as of trial.").

4

OCGA § 14-11-101 (18) provides in part: "A limited liability company is not required to execute its operating agreement and, except as otherwise provided in the operating agreement, is bound by its operating agreement whether or not the limited liability company executes the operating agreement."

Entera does not dispute that the amended complaint alleged facts that, if construed in the light most favorable to Practice Benefits, stated a claim for which relief could be granted. Further, Entera concedes that much of the language of OCGA § 14-11-101 (18) is on point. Based on the unambiguous language of § 14-11-101 (18), we hold that the trial court erred in dismissing the claims against Entera.

2. Practice Benefits contends that the trial court erred in dismissing its claims against Fain because the complaint alleged that it had suffered separate and distinct injuries, independent of the other members, as a result of Fain's breach of fiduciary duty.

Under OCGA § 14-11-305 (1), the managing members of a limited liability company owe fiduciary duties to the company and its member investors.[5] "The general rule is that actions for breach of fiduciary duties are to be brought in

---

[5] *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 236 (4) (659 SE2d 668) (2008) (citing OCGA § 14-11-305 (1)).

derivative suits. The general rule is applicable even where the individual is the sole stockholder."[6]

> The reasons underlying the general rule are that 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares.[7]

The determination whether the claims were derivative or direct "is made by looking to what the pleader alleged. It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision."[8]

---

[6] *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990) (citation and punctuation omitted).

[7] *Thomas v. Dickson*, 250 Ga. 772, 774 (301 SE2d 49) (1983) (citations omitted).

[8] *Phoenix Airline Svcs.*, 260 Ga. at 585 (1).

An exception applies, however, if the plaintiff alleges a "special injury," i.e., the shareholder was "injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action."[9]

Here, Practice Benefits alleged that it "was the only owner whose voting rights were wrongfully taken by Fain, the only owner who did not receive . . . distributions . . . , and the only owner who was not returned its Initial Capital Contribution." Although the right to proper election procedures inures to the benefit of all members,[10] a particular member may have a direct action alleging wrongful invalidation of its vote if the member sets forth a "separate and distinct" injury.[11]

Practice Benefits did not argue that the capital contribution should not have been returned or that distributions should not have been made but complained instead that the operating agreement required pro rata distribution based on each members'

---

[9] *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994).

[10] *Crittenton v. Southland Owners Assn.*, 312 Ga. App. 521, 524 (2) (718 SE2d 839) (2011); see also *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 625-626 (2) (b) (639 SE2d 570) (2006) (minority members failed to establish injuries separate and apart from the other shareholders because the interest and voting power of all the shareholders were diminished in proportion to their ownership by the selling of interests to new shareholders).

[11] See *Crittenton*, 312 Ga. App. at 524 (2).

7

percentage interest in Entera. Finally, there is no evidence that any of the four reasons for requiring a derivative suit is present in this case.[12]

The allegations in the amended complaint, construed in the light most favorable to Practice Benefits, and with all doubts resolved in its favor, do not disclose with certainty that Practice Benefits would not be entitled to relief under the "special injury" exception.[13] The trial court thus erred in dismissing the claims against Fain.

*Judgment reversed. Dillard, P. J., and Bethel, J., concur.*

---

[12] See *Thomas*, supra at 774-775 (holding that the plaintiff was allowed to bring a direct action for misappropriated corporate funds because she was the only injured shareholder, so there was no concern about a multiplicity of lawsuits and her recovery would not prejudice the other shareholders; she would not benefit from an increase in the value of her stock because there was no market for the stock of the closely held corporation; and the corporation's creditors would not be prejudiced).

[13] See *Grace Bros.*, supra at 820 (2) ("Where . . . it is sufficiently alleged that the effect of the controlling stockholders['] self-serving manipulation of corporate affairs causes a singular economic injury to minority interests alone, the minority have stated a cause of action for 'special' injury.") (citation omitted).