**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A2097. GEORGIA APPRECIATION PROPERTY, INC. v. ENCLAVE AT RIVERWALK TOWNHOME ASSOCIATION, INC.

BRANCH, Judge.

Georgia Appreciation Property, Inc. ("GAP") filed a declaratory judgment action against Enclave at Riverwalk Townhome Association, Inc., challenging an amendment to Enclave's governing documents that increased restrictions on owners who choose to lease out their townhome within the development. Enclave moved to dismiss the action on the ground that GAP lacked standing to file what Enclave contended was a derivative action. The parties also filed cross motions for summary judgment on the merits of GAP's claims. The trial court granted Enclave's motion to dismiss for lack of standing and further held that Enclave was entitled to summary judgment on the merits. GAP appeals. For the reasons that follow, we hold that the trial court correctly dismissed the action for lack of standing but that the portion of

the trial court's order that purports to enter judgment in favor of Enclave is void and must be vacated.[1]

Normally a motion to dismiss for failure to state a claim turns on the allegations of the complaint:

> [a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied.

*GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26, 28 (1) (785 SE2d 874) (2016) (citation omitted). And "[i]n deciding a motion to dismiss, all pleadings[2] are to be construed most favorably to the party who filed them, and all doubts regarding

---

[1] We have circulated this decision among all non-disqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of considering the case en banc.

[2] Courts are authorized to consider documents attached to pleadings when ruling on a motion to dismiss without converting the motion into one for summary judgment. See OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Lord v. Lowe*, 318 Ga. App. 222, 223 (741 SE2d 155) (2012).

such pleadings must be resolved in the filing party's favor." Id. (citation and punctuation omitted).

Nevertheless, a dismissal for failure to meet a procedural prerequisite to filing suit, such as for a failure to make a demand in connection with a derivative suit, is a dismissal due to a lack of subject-matter jurisdiction, which is a matter in abatement. *Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 617-618 (2) (a), n. 36 (724 SE2d 894) (2012); see also *First Christ Holiness Church v. Owens Temple First Christ Holiness Church*, 282 Ga. 883, 885, n. 11 (655 SE2d 605) (2008) (a challenge to the trial court's subject matter jurisdiction is a matter in abatement). And in considering a matter in abatement "a trial court is not confined to the allegations of the complaint." *Equity Trust Co. v. Jones*, 339 Ga. App. 11, 14 (792 SE2d 458) (2016) (citation and punctuation omitted).

Construed in favor of GAP, the record shows that at the time of the complaint, GAP owned two of thirty-two townhomes of Enclave at Riverwalk, a real estate development governed in part by a "Declaration of Protective Covenants, Conditions, Restrictions and Easements." With certain restrictions, the Declaration allowed a unit owner to lease his or her unit for residential purposes. As of February 2016, GAP leased out its two units as allowed by the Declaration.[3]

---

[3] It is undisputed that corporations were authorized to own townhomes at Enclave.

After an unchallenged February 2016 amendment to the Declaration,[4] the Declaration provided that it could be amended by a vote of two thirds of the "Total Association Vote" except where a higher vote is required by the Enclave bylaws or by the Georgia Property Owners' Association Act (the "POA Act"):

> Except where a higher vote is required for action under any other provision[s] of this Declaration, the Bylaws or by the [POA] Act, this Declaration may be amended with the affirmative vote, written consent, or any combination thereof of Owners holding 2/3 of the Total Association Vote.

And "Total Association Vote" is defined in the Declaration to mean that unit owners whose voting rights have been suspended are not counted as a part of the "Total Association Vote":

> "Total Association Vote" means the votes attributable to the entire membership of the Association (including votes of Declarant) as of the record date for such action, but specifically excluding the votes of any Owners whose voting rights have been suspended as provided herein, whether or not such members are present or represented at the meeting, if any, where such votes are to be cast.

The February 2016 amendment to the Declaration also submitted the property and Declaration to the provisions of the POA Act, OCGA § 44-3-220 et seq. As noted above, the provision of the Declaration that allows amendments thereto is expressly

---

[4] There is no indication that GAP objected to the February 2016 amendment.

4

subject to the terms of the POA Act. The POA Act has its own provision regarding amendment of an instrument, such as a declaration,[5] which provides:

> Except to the extent expressly permitted or required by other provisions of this article, the instrument shall be amended only by the agreement *of lot owners of lots to which two-thirds of the votes in the association pertain* or such larger majority as the instrument may specify[.]

See OCGA § 44-3-226 (a) (emphasis supplied).

On May 17, 2016, Enclave proposed 17 amendments to the Declaration and the bylaws of the Association and sought to obtain written consent to the amendments from the unit owners. Consents were returned to Enclave, and on July 8, 2016, Enclave published a notice to its members that it considered only 31 of 32 units eligible to vote on the amendments because one owner's right to vote had been suspended based on a delinquent account.[6] Enclave also announced that although

---

[5] The POA Act defines "instrument" as "the declaration, plats, and plans recorded pursuant to this article," and further provides that "[a]ny amendment . . . of any instrument shall, from the time of the recordation of such amendment or certification, be deemed an integral part of the affected instrument so long as such amendment . . . was made in accordance with this article." OCGA § 44-3-221 (17).

[6] Section 4. 7 of the Declaration provides:
The Association may also suspend the membership rights of the delinquent Owner, including the right to vote, the right of enjoyment in and to the Common Property (other than access to such Owner's Unit), the right of enjoyment in and to use the recreational amenities serving the Community pursuant to the Easement and Cost Sharing Agreement

5

some of the other amendments passed by a higher margin, proposed amendments 8, 11 and 12 had been approved with 21 affirmative votes. On October 5, 2016, Enclave recorded an amendment to the Declaration on the county deed records (the "October 2016 Amendment") based on the specific amendments that were deemed as having the required number of votes; this amendment thereby went into effect on that day. Proposed amendments 8, 11, and 12 are incorporated into and included in the October 2016 Amendment as sections 5, 8, and 9. And section 5 of the October 2016 Amendment imposed numerous additional restrictions on the ability of a lot owner to lease its townhome in the development.

Of concern to GAP, prior to the October 2016 Amendment, GAP could lease each of its townhomes unless title was "conveyed or transferred to another person or entity" or the unit was "not subject to a lease for ninety (90) or more consecutive days." In its appellate brief (but nowhere in the trial court, as shown below), GAP contends that the October 2016 Amendment stripped its right to continue to lease its units so long as neither of these two conditions occurred. Instead, under the amendment, GAP cannot continue leasing its units after the current tenants leave because a required future leasing permit is only available to owners who have "occupied the Unit as his or her principal and primary residence for more than thirty

and the right to receive and enjoy such servicing and other benefits as may then be provided by the Association.

6

(months), or satisfactorily demonstrate[d] to the Board that the Unit was purchased by the Owner to be used as a place of residence of the Owner and/or Owner's family." GAP argues on appeal that as a corporate owner, it could never qualify for a future leasing permit and that, as the only corporate owner, it therefore was targeted by the October 2016 Amendment.

In response to the October 2016 Amendment, GAP filed the present declaratory judgment action on October 24, 2016. In Count I, GAP asserted that the POA Act requires that all 32 members of the association must be counted for purposes of amending the Declaration; that, accordingly, 22 votes were required to pass all aspects of the October 2016 Amendment; that the amendment therefore is void in its entirety; and that GAP was entitled to a declaration to that effect. In Count II, GAP asserted that even if there were sufficient votes to pass the October 2016 Amendment, various sections of the amendment "directly violate provisions of the [POA] Act, other provisions of law [including the Constitutions of the State of Georgia and the United States], or extend beyond provisions authorized by the Act." GAP asserted that it was therefore entitled to an order voiding certain provisions of the amendment. In Count III, GAP asserted that the unlawful aspects of the October 2016 Amendment as described in Counts I and II "could affect the substantive property rights of [GAP] and the contractual relations between [GAP] and its tenants" and "could materially damage [GAP] *and other owners*, monetarily and otherwise." (Emphasis supplied.)

7

GAP asserted that it was entitled therefore to temporary and interlocutory injunctions restraining Enclave from enforcing the October 2016 Amendment. In Count IV, GAP averred that the amendment imposed additional leasing restrictions on its units without GAP's consent; that "the common law of Georgia requires a property owner's consent before a private party may impose substantive restrictions on the use of an owner's real property"; and that therefore, "[s]hould the [October] 2016 Amendment not be found void under Count I," GAP was entitled to an order invalidating "the additional substantive use restrictions purported to be imposed" on its property under the amendment. Finally, in Count V, GAP sought attorney fees allowed by the Declaration for actions against the association for "[f]ailure to comply with this Declaration, the Bylaws or the rules and regulations."

Enclave moved to dismiss on multiple grounds: (1) that GAP did not have standing to make the claims found in Counts I through IV because those claims were derivative in nature and GAP had not satisfied the necessary prerequisites for asserting such a claim; (2) that Count II seeks a mere advisory opinion; (3) that Counts I through IV fail because the October 2016 Amendment was valid under the POA Act; and (4) that GAP's claim for attorney fees fails with these other claims. The parties then filed cross-motions for summary judgment on the merits of GAP's claims.

8

GAP also moved for an interlocutory injunction against enforcement of the October 2016 Amendment during the pendency of the litigation. GAP acknowledged that other members were also leasing out their townhomes and argued that the an injunction was necessary to avoid irreparable harm to all affected lot owners:

> If the Association is not enjoined from enforcing the Disputed Amendments while this case proceeds in orderly fashion, significant irreparable harm will occur to the affected lot owners. The Association will continue to use threats of legal action and fines under the Disputed Amendments to force lot owners to dispose of their property or leave their properties vacant if the lot owner cannot occupy the unit. It would be inequitable to allow the Association to force irreparable harm on the affected lot owners based on the Disputed Amendments that are unlikely to survive challenge.

In support of its motion, GAP attached the affidavit of Scott Song, the spouse of a non-plaintiff member who also leased out her property prior to the October 2016 Amendment; the affidavit details how the new leasing restrictions had affected that member.

Ultimately, the trial court granted Enclave's motion to dismiss on the ground that GAP's claims were derivative in nature and not properly before the court. The court then held that "even if [GAP's] claims were properly before the Court, the Association would be entitled to summary judgment" because only 21 votes were required under the POA Act and other reasons. The court also held that GAP's claim

9

for fees failed. In its conclusion, the court granted Enclave's motion to dismiss and its motion for summary judgment and ruled that "Judgment shall be entered in favor of Defendant and against Plaintiff." GAP appeals.

1. In its first enumeration of error, GAP contends the trial court erred by dismissing Count I of its complaint for lack of standing to pursue a derivative action. We disagree.

Enclave was organized as a Georgia non-profit corporation pursuant to the Georgia Nonprofit Corporation Code. See OCGA § 14-3-101 et seq.; see also OCGA § 44-3-227 (a). Under that Code, members of a non-profit corporation may, under certain circumstances, file derivative proceedings. See OCGA §§ 14-3-740 through 14-3-747. In a nonprofit derivative suit,

> a member asserts for the corporation's benefit rights or remedies belonging to the corporation, not to the member. The wrong which the action seeks to redress is one which the corporation, not the individual, has sustained. Id. The member is a mere nominal party, having no right, title or interest in the claim itself. Id. One of the primary underlying reasons for the derivative action-especially applicable to nonprofits-is to avoid a multiplicity of lawsuits.

*Dunn v. Ceccarelli*, 227 Ga. App. 505, 507 (1) (a) (489 SE2d 563) (1997) (citations and punctuation omitted) (physical precedent only), quoted with approval in *Shorter College v. Baptist Convention of Ga.*, 279 Ga. 466, 469 (1) (614 SE2d 37) (2005)

10

("unless otherwise specifically noted, the fundamental rules and principles of law of profit and business corporations are equally applicable to nonprofit corporations") (citation and punctuation omitted); see, e.g., *Crittenton v. Southland Owners Assoc.*, 312 Ga. App. 521, 524 (2) (718 SE2d 839) (2011) (applying derivative suit analysis to a homeowners' association case).

But derivative proceedings are not authorized unless certain requirements are met, including that:

> (1) A written demand has been made upon the corporation to take suitable action; and (2) Ninety days have expired from the date the demand was made unless the complainant has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90 day period.

OCGA § 14-3-742 (a).[7] No such demand was made in this case.[8]

---

[7] To bring such a suit, a member must also "[f]airly and adequately represent[ ] the interests of the corporation in enforcing the right of the corporation. OCGA § 14-2-741.

[8] GAP's complaint does not allege any such demand, and the only document offered as evidence of such a demand fails in that regard. The May 12, 2016 letter predates the vote on the amendments at issue and, obviously, the letter does not demand that Enclave take action to remedy the alleged improper vote, which was announced in July 2016.

Members or directors of nonprofit corporations may also bring direct actions against the corporation, but "only if [the member] suffered a special injury as a result of the [corporate wrong]." *Dunn*, 227 Ga. App. at 508 (1) (a). More specifically,

> [T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation. . . . [T]o set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation. For a plaintiff to have standing to bring an individual action, he must be injured directly or independently of the corporation.

*Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 586 (1) (397 SE2d 699) (1990) (citations and punctuation omitted.); see also *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1994) ("a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action").

(a) The determination of whether a claim is derivative or direct "is made by looking to what the pleader alleged. It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." *Phoenix Airline*, 260 Ga. at 585 (1) (citations omitted). Here, GAP asserted in Count I that the

POA Act requires that all 32 members of the association must be counted for purposes of amending the Declaration; that, accordingly, 22 votes were required to pass all aspects of the October 2016 Amendment; that the October 2016 Amendment therefore is void in its entirety; and that GAP was entitled to a declaration to that effect.

First, as explained in *Dunn*, "[t]he right to fair and reasonable election procedures inures to the benefit of all members, and absent [deprivation of an individual member's vote], a director's interference with elections does not constitute a separate and distinct injury creating a right of direct action in an individual member." *Dunn*, 227 Ga. App. at 508-509 (1) (a) (footnote omitted); see also *Practice Benefits, LLC v. Entera Holdings, LLC*, 340 Ga. App. 378, 381 (2) (797 SE2d 250) (2017) ("the right to proper election procedures inures to the benefit of all members") (footnote omitted). "Indeed, election procedures properly conducted in accordance with the bylaws benefit all members; just as election irregularities harm all the members of a corporation." *Crittenton*, 312 Ga. App. at 524 (2) (footnote omitted).

In *Crittenton*, association members sought declaratory judgment as to whether the defendant homeowners association and several board members had employed proper election/voting procedures under the association's bylaws. Id. at 524 (2). This Court held that the plaintiffs essentially claimed "that defendants breached their

fiduciary duties owed to [the association] and all of its members." Id. Therefore the claims did not constitute claims for special injuries and were therefore derivative in nature. Id. Accordingly, the individual plaintiff members of the association did not have standing to bring a declaratory judgment action based on the assertion that proper election/voting procedures had not been followed. Id. at 525.

The present case is similar. GAP seeks a ruling that Enclave failed to count the votes that led to the October 2016 Amendment in accordance with the law. Essentially, Count I alleges that Enclave, which is operated through its board, violated the requirements of the POA Act when it counted the votes that led to the adoption of an amendment. Thus, valid or invalid, the October 2016 Amendment plainly affected all of the members of the association whether they were then leasing out their townhomes or simply had a right to do so. The Song affidavit and GAP's motion for an interlocutory injunction confirm that one or more other members were affected by the amendment. Further, any relief would come in the form of an order from the trial court declaring that the amendment was void, which would affect every members' ability to lease out their townhome. Thus, in Count I GAP has not alleged a "special injury," i.e., one that is separate and distinct from that suffered by other members. For the above reasons, we hold that GAPs claims in Count I are derivative and not direct. Id. Compare *Grace Bros.*, 264 Ga. at 820 (2) (where it is alleged "that

14

the effect of the controlling stockholders self-serving manipulation of corporate affairs causes a singular economic injury to minority interests alone, the minority have stated a cause of action for 'special' injury."); *Barnett v. Fullard*, 306 Ga. App. 148 154 (4) (701 SE2d 608) (2010) (direct action authorized where minority shareholder alleged that other shareholders caused corporation to forego distributing a portion of corporate income to the minority shareholder to whom it was owed).

GAP's reliance on *Practice Benefits*, 340 Ga. App. 378, is misplaced.[9] In that case, Practice Benefits, LLC, one of three members of a limited liability company named Entera, alleged that (1) under an operating agreement to form Entera, it was entitled to two votes regarding Entera's affairs but that Entera's manager refused to allow Practice Benefits to cast two votes; (2) Entera later returned the entire initial capital contributions of the other original members but failed to return Practice Benefits' share, to which it was entitled; and (3) Entera also made distributions to all members except for Practice Benefits, in violation of the operating agreement. Id. at 378. Thus, as this Court held, Practice Benefits's allegations showed that it was the only owner affected by these alleged wrongdoings and therefore it had alleged a separate and distinct injury. Id. at 381 (2).

---

[9] Another recent case relied upon by GAP is inapposite. See *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780 (805 SE2d 270) (2017) (does not address issue of whether claim is direct or derivative).

In sum, Count I of GAP's complaint raised claims that were derivative in nature but GAP failed to make a proper demand necessary to bring such a claim. The trial court therefore did not err in dismissing Count I.

(b) As stated above, the trial court held that GAP lacked standing for Counts I through IV because they were all derivative in nature. Yet on appeal, GAP failed to include any argument or citation of authority to show that the trial court erred by holding that GAP lacked standing on Counts II through IV. Accordingly, we deem those arguments abandoned. Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). But even if we were to consider whether Counts II through IV were also derivative in nature, we would come to the same conclusion with regard to those counts. Those counts also raise wrongs that would affect every member in the association. In fact, in Count III, GAP alleged that Enclave's actions as described in Counts I and II "could materially damage [GAP] and other owners." The Song affidavit and request for an interlocutory injunction support this conclusion, as well. Thus, the trial court correctly dismissed Counts II and III because they were derivative in nature.

In Count IV, GAP averred that the October 2016 Amendment imposed additional leasing restrictions on its units without GAP's consent; that "the common

law of Georgia requires a property owner's consent before a private party may impose substantive restrictions on the use of an owner's real property"; and that therefore, "[s]hould the [October] 2016 Amendment not be found void under Count I," GAP was entitled to an order invalidating "the additional substantive use restrictions purported to be imposed" on its property under the amendment. As plead, this claim fails as well for the same reason as Counts I through III. If Georgia law required the consent of the owners of the townhomes at Enclave before the October 2016 Amendment could be effective, such a law would apply equally to all owners at Enclave. Thus, again, GAP has not alleged a "special injury," i.e., one that is separate and distinct from that suffered by other members. Accordingly, the trial court did not err by dismissing Count IV because it was derivative in nature.

(c) On appeal, GAP raises a new argument. It argues that it was uniquely affected by Enclave's alleged wrongdoing because it was the only corporate member of Enclave at the time of the amendment and the amendment had a unique affect on corporate members. We find no reference to this argument in the trial court. The specific argument was not raised in the complaint, in GAP's motion and brief for summary judgment or theory of recovery and statement of material undisputed facts filed in support thereof, in GAP's response to Enclave's motion to dismiss, in GAP's motion and brief in support of a motion for interlocutory injunction, in GAP's brief

in response to Enclave's motion for summary judgment, or during oral argument in the trial court on these motions. Thus, the trial court never heard this claim before ruling on the motion to dismiss.

In a background allegation in its complaint, GAP did allege the following:

The 2016 Amendment made changes in the recorded declaration that materially affect the property rights of Plaintiff to continue renting its units, which damage to property rights of Plaintiff are separate and independent from any rights belonging to Defendant.

But even if we were to conclude that this allegation was sufficient to raise GAP's "uniquely affected" argument in the trial court, we still conclude that GAP has not alleged a "special injury," i.e., one that is separate and distinct from that suffered by other members of the association. Any member of the association was equally affected by the changes to the declaration that affected corporate owners because any member had the right under the declaration to own their property as a corporation and to lease out their property as such; the rights and property value of each member therefore was affected by the increased leasing restrictions.

In sum, the trial court correctly held that GAP's claims should be dismissed on the ground that GAP did not have standing to pursue a derivative claim against

18

Enclave and that the attorney fee claim accordingly fails as well. For this reason, we hold that the trial court did not err in dismissing GAP's claims. Nevertheless, we must vacate the order below and remand for entry of an order dismissing GAP's claims without prejudice. "When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice." *Strong v. JWM Holdings, LLC*, 341 Ga. App. 309, 315 (2) (800 SE2d 380) (2017), citing *Pinnacle*, 314 Ga. App. at 614 (1). Second, the portion of the trial court's order that purports to enter summary judgment in favor of Enclave on the merits is void. "A judgment rendered by a court without jurisdiction of the subject matter is absolutely void." *Williams v. Fuller*, 244 Ga. 846, 848 (2) (262 SE2d 135) (1979) (citations omitted); see also OCGA § 9-12-16 ("The judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."). We

19

therefore vacate the trial court order and remand the case with direction to enter a dismissal without prejudice.[10]

*Judgment vacated and case remanded with direction. Bethel, J., concurs. McFadden, P. J., dissents.* **\***

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2 (a).**

---

[10] Practitioners should take note that the Court of Appeals of Georgia significantly amended its procedures on how dissenting opinions are treated as of December 4, 2017. Prior to that date, when a judge of the assigned division dissented to the majority opinion, the nondisqualified judges from the next two divisions participated in the decision for a total of nine judges. See former OCGA § 15-3-1 (e) (2015). See also former OCGA § 15-3-1 (c) (1996) (prior to 2015, judges from the next division plus the presiding judge of the following division were required to participate in the decision for a total of seven judges).

The Appellate Jurisdiction Reform Act of 2016 permitted the Court of Appeals to establish new procedures by rule. Ga. L. 2016, p. 883. See also OCGA § 15-3-1 (c) (2) (authorizing the Court of Appeals to provide by rule for certain cases to be heard and determined by more than a single division). Effective December 4, 2017, Court of Appeals Rule 33.1 provides that a case will be heard and determined by a single division of the Court, except when the case is approved to receive en banc consideration by the entire Court. Any judge in the division may request that a poll be taken of the non-disqualified judges on the Court on the question of whether the case should be considered en banc. If the case is not taken en banc and there is a dissenting opinion, the majority opinion or portion thereof which is subject to the dissent is physical precedent only, that is, citable as persuasive but not binding authority. See Court of Appeals Rule 33.2 (a) (2).

A17A2097. GEORGIA APPRECIATION PROPERTY, INC. v. ENCLAVE AT RIVERWALK TOWNHOME ASSOCIATION, INC.

MCFADDEN, Presiding Judge, dissenting.

This is not a derivative proceeding. A derivative proceeding is "a civil suit in the right of a . . . corporation[.]" OCGA § 14-3-740 (1). This proceeding is in the right of the plaintiff, GAP, as the owner of real property. So I respectfully dissent.

The rights enjoyed by the owner of real property include the "unconditional power of disposition[.]" OCGA § 44-6-20. That power can, of course, be abridged in a variety of ways. GAP's contention here is that, when Enclave attempted to abridge that power over GAP's objection, Enclave overstepped its authority.

Property owners' associations like Enclave are creatures of statute, empowered to administer developments. See OCGA § 44-3-221 et seq. A "development" is "real property which contains lots" and is "subject to a declaration[.]" OCGA § 44-3-221 (18). A declaration is a "recordable instrument creating covenants upon property[.]" OCGA § 44-3-221 (6). Property owners's associations have the power to amend those declarations and thereby impose new covenants upon property — but "only by the

agreement of lot owners of lots to which two-thirds of the votes in the association pertain or such larger majority as the instrument may specify[.]" OCGA § 44-3-226 (a).

Here Enclave undertook to amend the declaration so that GAP would be prevented from leasing out its townhouses. GAP contends that the amendment is void because Enclave attempted, by disqualifying a delinquent member, to specify a smaller majority than the two-thirds required by statute.

There is no general rule that suits brought by members or shareholders against corporations must be brought as derivative suits. "The general rule is that actions for breach of fiduciary duties are to be brought in derivative suits." *Phoenix Airline Servs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990) (citation omitted). In a derivative suit, "the shareholder [or member] sues on behalf of the corporation for harm done to it." *Phoenix Airline*, 260 Ga. at 586 (1) (citation omitted). "The [shareholder or] member is a mere nominal party, having no right, title or interest in the claim itself." *Dunn v. Ceccarelli*, 227 Ga. App. 505, 507 (1) (a) (489 SE2d 563) (1997) (citation omitted).

GAP is not complaining about harm done to Enclave. Nor is GAP attempting to assert a right as a member of Enclave. Compare *Dunn v. Ceccarelli*, 227 Ga. App.

2

505 ("case involv[ing] challenges to the voting procedures in an election to a seat on the board of a timeshare owners' association."). Rather, GAP complains of an unauthorized abridgment of its own property rights.

So an inquiry into whether GAP falls into the "special injury exception," *Phoenix Airline*, 260 Ga. at 585, is misplaced. And it is irrelevant that other townhouse owners who want to rent their units might be able to rely on a decision in favor or GAP.

The complaint before us is a proper direct action, not a derivative action. The trial court's finding to the contrary should be reversed.