The February 2016 amendment to the Declaration also submitted the property and Declaration to the provisions of the POA Act, OCGA § 44-3-220 et seq. As noted above, the provision of the Declaration that allows amendments thereto is expressly subject to the terms of the
POA Act. The POA Act has its own provision regarding amendment of an instrument, such as a declaration,[5] which provides:
Except to the extent expressly permitted or required by other provisions of this article, the instrument shall be amended only by the agreement of lot owners of lots to which two-thirds of the votes in the association pertain or such larger majority as the instrument may specify[.]
See OCGA § 44-3-226 (a) (emphasis supplied).
On May 17, 2016, Enclave proposed 17 amendments to the Declaration and the bylaws of the Association and sought to obtain written consent to the amendments from the unit owners. Consents were returned to Enclave, and on July 8, 2016, Enclave published a notice to its members that it considered only 31 of 32 units eligible to vote on the amendments because one owner's right to vote had been suspended based on a delinquent account.[6] Enclave also announced that although some of the other amendments passed by a higher margin, proposed amendments 8, 11 and 12 had been approved with 21 affirmative votes. On October 5, 2016, Enclave recorded an amendment to the Declaration on the county deed records (the "October 2016 Amendment") based on the specific amendments that were deemed as having *161 the required number of votes; this amendment thereby went into effect on that day. Proposed amendments 8, 11, and 12 are incorporated into and included in the October 2016 Amendment as sections 5, 8, and 9. And section 5 of the October 2016 Amendment imposed numerous additional restrictions on the ability of a lot owner to lease its townhome in the development.
Of concern to GAP, prior to the October 2016 Amendment, GAP could lease each of its townhomes unless title was "conveyed or transferred to another person or entity" or the unit was "not subject to a lease for ninety (90) or more consecutive days." In its appellate brief (but nowhere in the trial court, as shown below), GAP contends that the October 2016 Amendment stripped its right to continue to lease its units so long as neither of these two conditions occurred. Instead, under the amendment, GAP cannot continue leasing its units after the current tenants leave because a required future leasing permit is only available to owners who have "occupied the Unit as his or her principal and primary residence for more than thirty (months), or satisfactorily demonstrate[d] to the Board that the Unit was purchased by the Owner to be used as a place of residence of the Owner and/or Owner's family." GAP argues on appeal that as a corporate owner, it could never qualify for a future leasing permit and that, as the only corporate owner, it therefore was targeted by the October 2016 Amendment.
In response to the October 2016 Amendment, GAP filed the present declaratory judgment action on October 24, 2016. In Count I, GAP asserted that the POA Act requires that all 32 members of the association must be counted for purposes of amending the Declaration; that, accordingly, 22 votes were required to pass all aspects of the October 2016 Amendment; that the amendment therefore is void in its entirety; and that GAP was entitled to a declaration to that effect. In Count II, GAP asserted that even if there were sufficient votes to pass the October 2016 Amendment, various sections of the amendment "directly violate provisions of the [POA] Act, other provisions of law [including the Constitutions of the State of Georgia and the United States], or extend beyond provisions authorized by the Act." GAP asserted that it was therefore entitled to an order voiding certain provisions of the amendment. In Count III, GAP asserted that the unlawful aspects of the October 2016 Amendment as described in Counts I and II "could affect the substantive property rights of [GAP] and the contractual relations between [GAP] and its tenants" and "could materially damage [GAP] and other owners , monetarily and otherwise." (Emphasis supplied.) GAP asserted that it was entitled therefore to temporary and interlocutory injunctions restraining Enclave from enforcing the October 2016 Amendment. In Count IV, GAP averred that the amendment imposed additional leasing restrictions on its units without GAP's consent; that "the common law of Georgia requires a property owner's consent before a private party may impose substantive restrictions on the use of an owner's real property"; and that therefore, "[s]hould the [October] 2016 Amendment not be found void under Count I," GAP was entitled to an order invalidating "the additional substantive use restrictions purported to be imposed" on its property under the amendment. Finally, in Count V, GAP sought attorney fees allowed by the Declaration for actions against the association for "[f]ailure to comply with this Declaration, the Bylaws or the rules and regulations."
Enclave moved to dismiss on multiple grounds: (1) that GAP did not have standing to make the claims found in Counts I through IV because those claims were derivative in nature and GAP had not satisfied the necessary prerequisites for asserting such a claim; (2) that Count II seeks a mere advisory opinion; (3) that Counts I through IV fail because the October 2016 Amendment was valid under the POA Act; and (4) that GAP's claim for attorney fees fails with these other claims. The parties then filed cross-motions for summary judgment on the merits of GAP's claims.
GAP also moved for an interlocutory injunction against enforcement of the October 2016 Amendment during the pendency of the litigation. GAP acknowledged that other members were also leasing out their townhomes *162 and argued that the an injunction was necessary to avoid irreparable harm to all affected lot owners:
If the Association is not enjoined from enforcing the Disputed Amendments while this case proceeds in orderly fashion, significant irreparable harm will occur to the affected lot owners. The Association will continue to use threats of legal action and fines under the Disputed Amendments to force lot owners to dispose of their property or leave their properties vacant if the lot owner cannot occupy the unit. It would be inequitable to allow the Association to force irreparable harm on the affected lot owners based on the Disputed Amendments that are unlikely to survive challenge.
In support of its motion, GAP attached the affidavit of Scott Song, the spouse of a non-plaintiff member who also leased out her property prior to the October 2016 Amendment; the affidavit details how the new leasing restrictions had affected that member.
Ultimately, the trial court granted Enclave's motion to dismiss on the ground that GAP's claims were derivative in nature and not properly before the court. The court then held that "even if [GAP's] claims were properly before the Court, the Association would be entitled to summary judgment" because only 21 votes were required under the POA Act and other reasons. The court also held that GAP's claim for fees failed. In its conclusion, the court granted Enclave's motion to dismiss and its motion for summary judgment and ruled that "Judgment shall be entered in favor of Defendant and against Plaintiff." GAP appeals.
1. In its first enumeration of error, GAP contends the trial court erred by dismissing Count I of its complaint for lack of standing to pursue a derivative action. We disagree. Enclave was organized as a Georgia non-profit corporation pursuant to the Georgia Nonprofit Corporation Code. See OCGA § 14-3-101 et seq. ; see also OCGA § 44-3-227 (a). Under that Code, members of a non-profit corporation may, under certain circumstances, file derivative proceedings. See OCGA §§ 14-3-740 through 14-3-747. In a nonprofit derivative suit,
a member asserts for the corporation's benefit rights or remedies belonging to the corporation, not to the member. The wrong which the action seeks to redress is one which the corporation, not the individual, has sustained. Id. The member is a mere nominal party, having no right, title or interest in the claim itself. Id. One of the primary underlying reasons for the derivative action-especially applicable to nonprofits-is to avoid a multiplicity of lawsuits.
Dunn v. Ceccarelli , 227 Ga. App. 505, 507 (1) (a), 489 S.E.2d 563 (1997) (citations and punctuation omitted) (physical precedent only), quoted with approval in Shorter College v. Baptist Convention of Ga. , 279 Ga. 466, 469 (1), 614 S.E.2d 37 (2005) ("unless otherwise specifically noted, the fundamental rules and principles of law of profit and business corporations are equally applicable to nonprofit corporations") (citation and punctuation omitted); see, e.g., Crittenton v. Southland Owners Assoc. , 312 Ga. App. 521, 524 (2), 718 S.E.2d 839 (2011) (applying derivative suit analysis to a homeowners' association case).
But derivative proceedings are not authorized unless certain requirements are met, including that:
(1) A written demand has been made upon the corporation to take suitable action; and (2) Ninety days have expired from the date the demand was made unless the complainant has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90 day period.
OCGA § 14-3-742 (a).[7] No such demand was made in this case.[8]
*163 Members or directors of nonprofit corporations may also bring direct actions against the corporation, but "only if [the member] suffered a special injury as a result of the [corporate wrong]." Dunn , 227 Ga. App. at 508 (1) (a), 489 S.E.2d 563. More specifically,
[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation. ... [T]o set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder which exists independently of any right of the corporation. For a plaintiff to have standing to bring an individual action, he must be injured directly or independently of the corporation.
Phoenix Airline Svcs. v. Metro Airlines , 260 Ga. 584, 586 (1), 397 S.E.2d 699 (1990) (citations and punctuation omitted.); see also Grace Bros. v. Farley Indus. , 264 Ga. 817, 819 (2), 450 S.E.2d 814 (1994) ("a shareholder must be injured in a way which is different from the other shareholders or independently of the corporation to have standing to assert a direct action").
(a) The determination of whether a claim is derivative or direct "is made by looking to what the pleader alleged. It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." Phoenix Airline , 260 Ga. at 585 (1), 397 S.E.2d 699 (citations omitted). Here, GAP asserted in Count I that the POA Act requires that all 32 members of the association must be counted for purposes of amending the Declaration; that, accordingly, 22 votes were required to pass all aspects of the October 2016 Amendment; that the October 2016 Amendment therefore is void in its entirety; and that GAP was entitled to a declaration to that effect.
First, as explained in Dunn , "[t]he right to fair and reasonable election procedures inures to the benefit of all members, and absent [deprivation of an individual member's vote], a director's interference with elections does not constitute a separate and distinct injury creating a right of direct action in an individual member." Dunn , 227 Ga. App. at 508-509 (1) (a), 489 S.E.2d 563 (footnote omitted); see also Practice Benefits, LLC v. Entera Holdings, LLC , 340 Ga. App. 378, 381 (2), 797 S.E.2d 250 (2017) ("the right to proper election procedures inures to the benefit of all members") (footnote omitted). "Indeed, election procedures properly conducted in accordance with the bylaws benefit all members; just as election irregularities harm all the members of a corporation." Crittenton , 312 Ga. App. at 524 (2), 718 S.E.2d 839 (footnote omitted).
In Crittenton , association members sought declaratory judgment as to whether the defendant homeowners association and several board members had employed proper election/voting procedures under the association's bylaws. Id. at 524 (2), 718 S.E.2d 839. This Court held that the plaintiffs essentially claimed "that defendants breached their fiduciary duties owed to [the association] and all of its members." Id. Therefore the claims did not constitute claims for special injuries and were therefore derivative in nature. Id. Accordingly, the individual plaintiff members of the association did not have standing to bring a declaratory judgment action based on the assertion that proper election/voting procedures had not been followed. Id. at 525, 718 S.E.2d 839.
The present case is similar. GAP seeks a ruling that Enclave failed to count the votes that led to the October 2016 Amendment in accordance with the law. Essentially, Count I alleges that Enclave, which is operated through its board, violated the requirements of the POA Act when it counted the votes that led to the adoption of an amendment. Thus, valid or invalid, the October 2016 Amendment plainly affected all of the members of the association whether they were then leasing out their townhomes or simply had a right to do so. The Song affidavit and GAP's motion for an interlocutory injunction confirm that one or more other members *164 were affected by the amendment. Further, any relief would come in the form of an order from the trial court declaring that the amendment was void, which would affect every members' ability to lease out their townhome. Thus, in Count I GAP has not alleged a "special injury," i.e., one that is separate and distinct from that suffered by other members. For the above reasons, we hold that GAPs claims in Count I are derivative and not direct. Id. Compare Grace Bros. , 264 Ga. at 820 (2), 450 S.E.2d 814 (where it is alleged "that the effect of the controlling stockholders self-serving manipulation of corporate affairs causes a singular economic injury to minority interests alone, the minority have stated a cause of action for 'special' injury."); Barnett v. Fullard , 306 Ga. App. 148 154 (4), 701 S.E.2d 608 (2010) (direct action authorized where minority shareholder alleged that other shareholders caused corporation to forego distributing a portion of corporate income to the minority shareholder to whom it was owed).
GAP's reliance on Practice Benefits , 340 Ga. App. 378, 797 S.E.2d 250, is misplaced.[9] In that case, Practice Benefits, LLC, one of three members of a limited liability company named Entera, alleged that (1) under an operating agreement to form Entera, it was entitled to two votes regarding Entera's affairs but that Entera's manager refused to allow Practice Benefits to cast two votes; (2) Entera later returned the entire initial capital contributions of the other original members but failed to return Practice Benefits' share, to which it was entitled; and (3) Entera also made distributions to all members except for Practice Benefits, in violation of the operating agreement. Id. at 378, 797 S.E.2d 250. Thus, as this Court held, Practice Benefits's allegations showed that it was the only owner affected by these alleged wrongdoings and therefore it had alleged a separate and distinct injury. Id. at 381 (2), 797 S.E.2d 250.
In sum, Count I of GAP's complaint raised claims that were derivative in nature but GAP failed to make a proper demand necessary to bring such a claim. The trial court therefore did not err in dismissing Count I.
(b) As stated above, the trial court held that GAP lacked standing for Counts I through IV because they were all derivative in nature. Yet on appeal, GAP failed to include any argument or citation of authority to show that the trial court erred by holding that GAP lacked standing on Counts II through IV. Accordingly, we deem those arguments abandoned. Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). But even if we were to consider whether Counts II through IV were also derivative in nature, we would come to the same conclusion with regard to those counts. Those counts also raise wrongs that would affect every member in the association. In fact, in Count III, GAP alleged that Enclave's actions as described in Counts I and II "could materially damage [GAP] and other owners." The Song affidavit and request for an interlocutory injunction support this conclusion, as well. Thus, the trial court correctly dismissed Counts II and III because they were derivative in nature.
In Count IV, GAP averred that the October 2016 Amendment imposed additional leasing restrictions on its units without GAP's consent; that "the common law of Georgia requires a property owner's consent before a private party may impose substantive restrictions on the use of an owner's real property"; and that therefore, "[s]hould the [October] 2016 Amendment not be found void under Count I," GAP was entitled to an order invalidating "the additional substantive use restrictions purported to be imposed" on its property under the amendment. As plead, this claim fails as well for the same reason as Counts I through III. If Georgia law required the consent of the owners of the townhomes at Enclave before the October 2016 Amendment could be effective, such a law would apply equally to all owners at Enclave. Thus, again, GAP has not alleged a "special injury," i.e., one that is separate and distinct *165 from that suffered by other members. Accordingly, the trial court did not err by dismissing Count IV because it was derivative in nature.
(c) On appeal, GAP raises a new argument. It argues that it was uniquely affected by Enclave's alleged wrongdoing because it was the only corporate member of Enclave at the time of the amendment and the amendment had a unique affect on corporate members. We find no reference to this argument in the trial court. The specific argument was not raised in the complaint, in GAP's motion and brief for summary judgment or theory of recovery and statement of material undisputed facts filed in support thereof, in GAP's response to Enclave's motion to dismiss, in GAP's motion and brief in support of a motion for interlocutory injunction, in GAP's brief in response to Enclave's motion for summary judgment, or during oral argument in the trial court on these motions. Thus, the trial court never heard this claim before ruling on the motion to dismiss.
In a background allegation in its complaint, GAP did allege the following:
The 2016 Amendment made changes in the recorded declaration that materially affect the property rights of Plaintiff to continue renting its units, which damage to property rights of Plaintiff are separate and independent from any rights belonging to Defendant.
But even if we were to conclude that this allegation was sufficient to raise GAP's "uniquely affected" argument in the trial court, we still conclude that GAP has not alleged a "special injury," i.e., one that is separate and distinct from that suffered by other members of the association. Any member of the association was equally affected by the changes to the declaration that affected corporate owners because any member had the right under the declaration to own their property as a corporation and to lease out their property as such; the rights and property value of each member therefore was affected by the increased leasing restrictions.
In sum, the trial court correctly held that GAP's claims should be dismissed on the ground that GAP did not have standing to pursue a derivative claim against Enclave and that the attorney fee claim accordingly fails as well. For this reason, we hold that the trial court did not err in dismissing GAP's claims. Nevertheless, we must vacate the order below and remand for entry of an order dismissing GAP's claims without prejudice. "When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice." Strong v. JWM Holdings, LLC , 341 Ga. App. 309, 315 (2), 800 S.E.2d 380 (2017), citing Pinnacle , 314 Ga. App. at 614 (1), 724 S.E.2d 894. Second, the portion of the trial court's order that purports to enter summary judgment in favor of Enclave on the merits is void. "A judgment rendered by a court without jurisdiction of the subject matter is absolutely void." Williams v. Fuller , 244 Ga. 846, 848 (2), 262 S.E.2d 135 (1979) (citations omitted); see also OCGA § 9-12-16 ("The judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."). We therefore vacate the trial court order and remand the case with direction to enter a dismissal without prejudice.[10]
*166 Judgment vacated and case remanded with direction.
*THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2 (a).
Bethel, J., concurs. McFadden, P. J., dissents.*

The POA Act defines "instrument" as "the declaration, plats, and plans recorded pursuant to this article," and further provides that "[a]ny amendment ... of any instrument shall, from the time of the recordation of such amendment or certification, be deemed an integral part of the affected instrument so long as such amendment ... was made in accordance with this article." OCGA § 44-3-221 (17).

Section 4. 7 of the Declaration provides:
The Association may also suspend the membership rights of the delinquent Owner, including the right to vote, the right of enjoyment in and to the Common Property (other than access to such Owner's Unit), the right of enjoyment in and to use the recreational amenities serving the Community pursuant to the Easement and Cost Sharing Agreement and the right to receive and enjoy such servicing and other benefits as may then be provided by the Association.

To bring such a suit, a member must also "[f]airly and adequately represent[ ] the interests of the corporation in enforcing the right of the corporation. OCGA § 14-2-741.

GAP's complaint does not allege any such demand, and the only document offered as evidence of such a demand fails in that regard. The May 12, 2016 letter predates the vote on the amendments at issue and, obviously, the letter does not demand that Enclave take action to remedy the alleged improper vote, which was announced in July 2016.

Another recent case relied upon by GAP is inapposite. See SAWS at Seven Hills, LLC v. Forestar Realty, Inc. , 342 Ga. App. 780, 805 S.E.2d 270 (2017) (does not address issue of whether claim is direct or derivative).

Practitioners should take note that the Court of Appeals of Georgia significantly amended its procedures on how dissenting opinions are treated as of December 4, 2017. Prior to that date, when a judge of the assigned division dissented to the majority opinion, the nondisqualified judges from the next two divisions participated in the decision for a total of nine judges. See former OCGA § 15-3-1 (e) (2015). See also former OCGA § 15-3-1 (c) (1996) (prior to 2015, judges from the next division plus the presiding judge of the following division were required to participate in the decision for a total of seven judges).
The Appellate Jurisdiction Reform Act of 2016 permitted the Court of Appeals to establish new procedures by rule. Ga. L. 2016, p. 883. See also OCGA § 15-3-1 (c) (2) (authorizing the Court of Appeals to provide by rule for certain cases to be heard and determined by more than a single division). Effective December 4, 2017, Court of Appeals Rule 33.1 provides that a case will be heard and determined by a single division of the Court, except when the case is approved to receive en banc consideration by the entire Court. Any judge in the division may request that a poll be taken of the non-disqualified judges on the Court on the question of whether the case should be considered en banc. If the case is not taken en banc and there is a dissenting opinion, the majority opinion or portion thereof which is subject to the dissent is physical precedent only, that is, citable as persuasive but not binding authority. See Court of Appeals Rule 33.2 (a) (2).